ATCHISON, T. & S. F. R. CO. v. McCLURG.

(Circuit Court of Appeals, Eighth Circuit. January 29, 1894.)

No. 326.

1. RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—QUESTION FOR JURY.
 The question of contributory negligence is properly submitted to the jury, when there is much contradiction as to the care exercised by plaintiff in approaching the crossing, and it appears that there were obstructions to his view of the track, and that no bell was rung or whistle blown.

2. SAME—DEGREE OF CARE REQUIRED—INSTRUCTIONS.
 The obligations of railroad companies and of travelers crossing their tracks are mutual and reciprocal, and an instruction is erroneous which requires "ordinary" care of the traveler, and "a high degree of care" of the company. Caldwell, Circuit Judge, dissenting, on the grounds that the alleged error was not assigned, was not prejudicial, and that the charge, by specifying the acts required of the traveler, did in fact require of him as high a degree of care as that required of the company.

3. APPEAL—HARMLESS ERROR—PRESUMPTIONS.
 An error in giving instructions must lead to reversal, unless it clearly appears from the record that the error was harmless.

In Error to the United States Court in the Indian Territory.

At Law. Action by James McClurg against the Atchison, Topeka & Santa Fe Railroad Company to recover damages for personal injuries received at a crossing. Verdict and judgment for plaintiff. Defendant brings error. Reversed.

Henry E. Asp and J. W. Shartel, (Geo. R. Peck, on the brief,) for plaintiff in error.

Amos Green and W. A. Monroe, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge. This was a suit for personal injuries which the defendant in error sustained at a railroad crossing in the suburbs of the town of Purcell, in the Indian Territory, on March 4, 1891. The record discloses that on that day he started home from Purcell, in company with a neighbor of his by the name of Wear, who owned and was driving the team behind which they were riding. The road taken to get out of town lay for some distance along the west side of the railroad company's main and side tracks, leading north from its depot in Purcell, but at a point about 950 feet north from the depot the road turned east, at right angles, and crossed the tracks. When they reached this crossing on their way home, a switch engine approached from the south, which was pushing in advance of it three box cars and a coal car. Anticipating a collision from the proximity of the train and its rapid approach, the defendant in error leaped from the wagon when it was about on the crossing, and was run over and seriously injured. A number of exceptions that were taken on the trial have been argued in this court, but the view that we have taken of the case only renders it necessary to consider two questions. The first is whether the lower court should have declared,

as a matter of law, that the defendant in error was guilty of contributory negligence, and the second is whether the lower court properly charged the jury that it was the duty of the defendant railway company to exercise a high degree of care in propelling its engines and cars over the crossing in question. We are of the opinion that the question of contributory negligence was properly submitted to the jury. There was the usual conflict of evidence touching the conduct of the defendant in error and his companion as they approached the crossing. The testimony for the railroad company tended strongly to show that as McClurg and his neighbor drove northwardly from the depot along the railway track, and as they turned east to cross the track, they took no precautions, such as prudent men ought to have taken, to discover approaching trains; that at several places between the depot and the crossing, if they had turned their heads slightly to look in the direction of the depot, they must have seen the approaching switch engine; that other persons saw it approaching, and tried to warn them of the impending danger by loud outcries, because they seemed utterly unaware of the presence of the train, and apparently indifferent to dangers of that character. Undoubtedly, there was considerable testimony before the jury which tended to show that McClurg and Wear, who was driving the team, were both guilty of gross carelessness. On the other hand, the testimony of both of these parties tended to show (and this fact seems to be conceded) that the switch engine gave no signals, either with the bell or whistle, to warn people of its coming. They further testified that their view of the track on which the train was moving was obstructed by a long row of box cars standing on an intermediate side track, and that it was obstructed, when they turned east to cross the track, by a tool house which stood at the angle of the road, so that they were in fact unable to see down the track towards the approaching engine until they were nearly on the crossing, and the train was upon them. Both witnesses gave evidence tending to show that they made every reasonable effort, by looking and listening, to ascertain the presence of any moving train in time to avoid it. We think, therefore, (and we are all agreed on this proposition,) that it was fairly within the province of the jury to settle the question of contributory negligence.

With respect to the second question above stated, it is to be observed that the lower court charged the jury in the following language: "A railway company is held to a high degree of care in propelling its engines and cars over a public crossing in a town or city." An exception was duly taken to this instruction, and it is criticised for the following reasons: First, because it does not prescribe the degree of care that a railway company is bound to exercise, whether the crossing be in a city or town, or in the country; second, that the direction was inapplicable in the present case, because the crossing in question was outside of the corporate limits of the town of Purcell; and, lastly, because the court thereby imposed a higher degree of care on the railway company than it exacted of the defendant in error by its other instructions. We

will not stop to inquire whether the evidence showed that the crossing now in question was within or outside of the town of Purcell, for, if the direction would have been proper with respect to crossings within the town, then we have no doubt, under the testimony in the case, that it was equally proper with respect to the crossing where the accident happened. It was evidently a crossing in the suburbs of the town, which was much frequented by teams entering and leaving the place, and whether it was a hundred yards outside of the corporate limits, or an equal distance within the outboundaries of the town, cannot alter the degree of care that the railway company ought to have exercised, inasmuch as there was no local law or ordinance defining its duty in the premises. In the absence of any such law or ordinance imposing special duties upon the railway company within the corporate limits, it cannot be maintained, with any show of reason, that the obligation of the company with respect to the exercise of care was altered when it crossed an imaginary line separating the town from the country. The truth is that it was bound, in any event, to exercise a degree of watchfulness commensurate with the character of the crossing and the amount of travel over the same. It was required to take such precautions as a prudent person would have taken under like conditions and circumstances. As is well known, some crossings are comparatively safe, while others are exceedingly dangerous; and the degree of care to be exercised by a railway company, or a traveler upon the highway, should be graduated to suit the exigencies of each particular case. Improvement Co. v. Stead, 95 U. S. 161, 165. We are persuaded that the vice of the instruction now under consideration lies in the fact that, when read in connection with other parts of the charge, it imposed upon the railway company a higher degree of care and diligence than the plaintiff was required to exercise. The trial court instructed the jury that "a person approaching a railroad crossing is bound to look and listen, and to use ordinary care, to ascertain if there is a train approaching." In at least five other paragraphs of the charge the same thought was repeated,—that the plaintiff, on his part, was only bound to exercise ordinary care in endeavoring to discover whether any train was nearing the crossing. On the other hand, in defining the duty of the railway company by the instruction heretofore quoted, the trial court seems to have assumed that the crossing in question was within the corporate limits of the town of Purcell, and that in approaching that crossing it was the duty of the employes of the railway company to exercise a high degree of care. It is evident, we think, that the charge was erroneous, and well calculated to mislead the jury, in that it did not correctly define the relative degree of care that the respective parties were required to exercise. We should have no doubt on this point if it were a question of first impression, for a person may reasonably be expected and required to take as great precautions to avoid getting hurt as others are required to take to avoid injuring him. But, be this as it may, it has been expressly ruled that "the obligations, rights, and duties of railroads, and

travelers upon highways crossing them, are mutual and reciprocal, and that no greater degree of care is required of the one than of the other." Improvement Co. v. Stead, 95 U. S. 163, 164. See, also, Railroad Co. v. Goetz, 79 Ky. 442, and Willoughby v. Railroad Co., 37 Iowa, 432. And in the case of Railroad Co. v. Converse, 139 U. S. 469, 473, 475, 11 Sup. Ct. 569, which is cited by counsel, with apparent confidence, in support of the proposition that under some circumstances it is the duty of a railway company at a crossing to exercise a high degree of care, the rule was fully recognized that in every case a traveler upon the highway must exercise the same degree of caution which the law in the particular case exacts of the railway company. The error thus noted was called to the attention of the lower court by an exception taken on the trial to instructions given in behalf of plaintiff, on the ground that they required of him a less degree of care than had been imposed on the railway company; and the error in question is apparent from a casual reading of the charge. It has been suggested, however, that it was not a prejudicial error, nor of sufficient importance to warrant a reversal. With respect to that suggestion, it is sufficient to say that the very reverse of this proposition seems to us to be true. In a case of this character, where the facts all lie within a narrow compass, and a jury is required to fix the responsibility for the accident by nicely balancing the actions and conduct of one party against those of the other, it is not improbable that the fact that one of the parties was required to exercise a higher degree of care than the other may have had a controlling influence. We must presume from the fact that the court used the expression "a high degree of care" with respect to the railway company, and repeatedly used the phrase "ordinary care" in defining the duty of the plaintiff, that the jury attached some importance to the distinction thus drawn. Moreover, unless it clearly appears from the face of the record that the error was harmless, we are not allowed to speculate as to its probable consequences.

The judgment of the lower court will therefore be reversed, and the cause remanded, with directions to grant a new trial.

SANBORN, Circuit Judge, concurs.

CALDWELL, Circuit Judge, (dissenting.) This case ought not to be reversed upon the grounds stated in the opinion of the majority of the court.

In the introduction of its charge, the court said to the jury: "A railway company is held to a high degree of care in propelling its engine and cars over a public crossing in a town or city." The bill of exceptions states that the defendant excepted to this instruction "because said instruction assumed a state of facts not in proof, there being no evidence in said cause as to the crossing in question being within the limits of any town or city, and because said instruction invades the province of the jury in not submitting the question as to whether the accident occurred within the limits of the town, and assuming it to have been proved, and as contrary to

law." It will be observed that this exception to the charge states specifically the ground of the objection. The first and principal one is that there was no evidence that the crossing was within a town or city. I do not understand the majority of the court to question the fact that there was abundant evidence to show that the accident occurred either in a town or in a thickly-settled suburb.

It is apparent from a reading of the testimony that the case was tried by both parties on the assumption that the accident happened at or near the town of Purcell. In examining its own witnesses the defendant assumed and proved this fact. It called one Prewitt, a switchman in its employ, who was asked and answered questions as follows:

"Q. What business are you engaged in? A. Switching. Q. Of what company are you in the employ? A. The Sante Fe. Q. What were you engaged in doing on the 4th of March, 1891? A. Switching. Q. Where? A. Purcell. Q. Did you have an accident there at that time? A. I did. Q. Where were you at the time of this accident? A. On the rear car."

Its yard master testified as follows:

"Q. What business are you engaged in? A. Railroading. Q. In what capacity? A. Yard master. Q. Were you at Purcell on the 4th day of March, 1891? A. I was. Q. Were you yard master there at that time? A. Yes, sir."

The witness Fredericks testified as follows:

"Q. Where were you on the 4th day of March, 1891, the day this accident occurred to this plaintiff here? A. I was in Purcell, on the side of a building. Q. How far was that building from the crossing north of the depot between Lexington and Purcell? A. Well, I guess about four hundred feet, maybe."

There was other testimony to the same effect, and no testimony to the contrary. The rule is that a railroad company, in the running of its trains, is bound to use all the care and caution at grade crossings that the actual situation requires; and the rule is uniform that at crossings in towns and thickly-settled communities it must exercise a high degree of care.

In Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, the supreme court say:

"In some localities, in thickly-settled communities, greater vigilance and more safeguards are required upon the part of the railroad company than would be necessary in other localities. What would be due care in one locality might be negligence in another. A very high degree of caution and circumspection is required under some circumstances."

The "circumstances" which impose this high degree of care were present in this case. See, to same effect, Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679; Beach, Contrib. Neg. § 19 et seq.; Id. § 450; Cremer v. Portland, 36 Wis. 92.

The exception in the lower court, as we have seen, was not that the instruction excepted to did not abstractly state the law, but that it assumed a state of facts with reference to the place of accident which was not true, or that ought, at least, to have been left to the jury. But exception is taken by the majority of the court to the use of the epithet "high," not because the term in

itself, so far as it could have any meaning, imposed too high a degree of care on the defendant. The ground of objection, as stated by the majority of the court, is:

"We are persuaded that the vice of the instruction now under consideration lies in the fact that, when read in connection with other parts of the charge, it imposed upon the railway company a higher degree of care and diligence than the plaintiff was required to exercise."

The objection is not that the instruction upon which error is assigned is erroneous for the reasons assigned to the trial court, or, indeed, at all, but that another part of the charge, which was not assigned for error, is erroneous. No part of the charge relating to the degree of care the plaintiff was required to exercise is assigned for error, or even alluded to in the assignment of errors. When the plaintiff in error came to file its assignment of errors, it abandoned the exception it had taken to this part of the charge, and did not assign error upon it. Rule 11 of this court reads:

"When the error alleged is to the charge of the court, the assignment of errors shall set out the part referred to totidem verbis, whether it be in instructions given or in instructions refused. Such assignment of errors shall form part of the transcript of the record and be printed with it. When this is not done, counsel will not be heard, except at the request of the court; and errors not assigned according to this rule will be disregarded, but the court, at its option, may notice a plain error not assigned."

The majority of the court have made an assignment of error for the defendant, which it did not make for itself, and upon that assignment reversed the case. That the alleged error is not such a plain one that the court should, of its own motion, take notice of it, will plainly appear when all the trial court said on that subject is considered. The court told the jury:

"It is the duty of a person about to cross a railroad track to make a vigilant use of his senses of sight and hearing; and if, for any reason, the view is obstructed, it then becomes his duty to make a more vigilant use of the sense of hearing. For the purposes of this case, no neglect of duty on the part of the railroad company will excuse the plaintiff, upon approaching a highway crossing in question on the track of the defendant, from using the senses of sight and hearing, where these can be availed. An injury to such person, where the use of either or both of such faculties would have given sufficient warning to have enabled him to avoid the danger, conclusively proves the negligence of the plaintiff, and there can be no recovery for such injury; and if the plaintiff had such warning as would, with ordinary caution, in such circumstances, have saved him from danger, he will be held to have knowingly contributed to his own injury, and cannot recover.

"It is the duty of a person about to cross a railroad track to look in each direction for an approaching train; and a failure so to do, if any injury results, will not be excused because a train of a railroad company may be claimed to have omitted the giving of the appropriate signals of its approach.

"A person approaching a railroad crossing is bound to look and listen, and to use ordinary care to ascertain if there is a train approaching; but if he fails to so do, and injury results, he is not entitled to recover from the railroad company, even though it was guilty of negligence in not giving the required signals. If, using his eyes and ears, he sees or hears the approaching train, and tries the experiment of crossing in advance of it, his failure to do so will be his own fault, and he cannot recover of such company.

"The negligence of an engineer of a railroad train to sound its whistle or ring its bell on nearing a public crossing, does not relieve the traveler on such highway from taking ordinary precautions for his own safety. Before

attempting to cross the railroad track he is bound to use his senses,—to listen and to look,—in order to avoid any possible accident from an approaching train. If he fails to use them, and drives upon the track, or if, using them, he sees the train coming, and, instead of waiting for it to pass, undertakes to cross the track, and in either case receives an injury, he so far contributes thereto as to deprive him of any right of complaint. If one in such a position takes risks, he must suffer the consequences. They cannot be visited upon the railroad company."

This charge points out with distinctness and particularity the degree of care the plaintiff was required to exercise, by specifying the acts required of him. The term "high" was used by the lower court in the sense that the defendant was required to exercise a degree of care commensurate with the danger at the crossing. By itself, the term could have little or no meaning to a jury. The inquiry would arise at once, what was a high degree of care, as applied to a railroad at a level crossing in a town or its suburbs? Did it require that the company should keep a flagman stationed at the crossing, or have a gate across the railroad track, or sound the whistle, or ring the bell?

The court, immediately after its opening remark, defined what it meant by the use of the term, by telling the jury:

"If you believe from the evidence in this case that the defendant railway company, through its agents and servants, did operate and propel its cars in the manner described in the complaint, and that by the unusual speed of this train, and the failure of the servants to give signals,—to ring a bell or blow a whistle,—the plaintiff in this cause was injured at the public crossing without any fault or negligence on his part, you will find for the plaintiff."

"And if you believe, from the evidence in this case, that the defendant's servants or employes saw the plaintiff upon the track, or by the use of ordinary care might have seen him there, and saw him in time for warning him by ringing the bell or blowing the whistle, or giving other signals, to have prevented this accident, and such agents or servants, after seeing him, failed to give these signals or these warnings, and that injury resulted from such failure, you will find for the plaintiff in the case."

"Before the plaintiff can recover in this action it is his duty to satisfy you, by a preponderance of the evidence, that on the 4th day of March, 1891, he was injured by being run over by one of the defendant's trains, and that the negligence of the defendant's agents, servants, and employes in not giving any signal of the approach of its train was the cause of his being so injured, and that the plaintiff himself was not guilty of any negligence that assisted in producing or causing the accident."

The correctness of the instruction must be determined, not by the use of a single epithet or adjective, quite meaningless in itself, but by the definition given to it by the court; and no exception was taken to the definition. It makes no difference that the phrases "ordinary care" or "high degree of care" were used in the course of the charge, if the enumeration and specification of the particular things the plaintiff and defendant, respectively, were required to do, were given to the jury. As to the duty of the plaintiff, the language of the court goes further than that of the supreme court in defining the duty of a plaintiff under such circumstances. In Improvement Co. v. Stead, 95 U. S. 164, the supreme court said: "Those who are crossing a railroad track are bound to exercise ordinary care to ascertain whether a train is approaching." The

court in this case defined at length, and accurately, what was meant by "ordinary care" in such cases.

It is perfectly obvious that, taking the charge as a whole, the jury must have understood that it was the duty of the plaintiff to do the very things that in law constituted a high degree of care, or, in other words, to exercise the same degree of care that was required of the defendant. The court told the jury that it was the duty of the plaintiff "to make a vigilant use of his senses of sight and hearing, and if, for any reason, the view is obstructed, it then becomes his duty to make a more vigilant use of the sense of hearing;" and that "an injury to such person, when the use of either or both of such faculties would have given sufficient warning to have enabled him to avoid the danger, conclusively proves the negligence of the plaintiff, and there can be no recovery for such injury;" and that it was the duty of the plaintiff, when about to cross the "railroad track, to look in each direction for an approaching train;" and that "before attempting to cross the railroad track he is bound to use his senses,—to listen and to look,—in order to avoid any possible accident from an approaching train."

The language of this charge, pointing out, as it does, specifically what the plaintiff was required to do, was much better calculated to impress the jury with the idea that the plaintiff was required to exercise a high degree of caution and diligence than if the court had simply said to them that he was required to exercise a high degree of care. Unquestionably, the enumeration of the particular acts required is a more effective mode of conveying to the mind of a jury what is required of a party than the use of any single adjective descriptive of the degree of care can be. The expressions "high degree of care" and "ordinary degree of care," as applied to a case like this, convey to the minds of jurors, at best, a very imperfect idea of the acts which go to make up these different degrees of care. It is the illustrations and definitions given by the court, and not a mere descriptive epithet, that are controlling with the jury. The plain and sensible men who compose our juries know very little of the nice distinctions between the adjectives used to describe the different degrees of care and negligence. Indeed, many courts and lawyers have expressed their disapprobation of any such distinctions, and among them the supreme court of the United States.

"The theory," says Mr. Justice Curtis, "that there are three degrees of negligence, described by the terms 'slight,' 'ordinary,' and 'gross,' has been introduced into the common law from some of the commentators on the Roman law. It may be doubted if these terms can be usefully applied in practice. * * * One degree, thus described, not only may be confounded with another, but it is quite impracticable exactly to distinguish them. Their signification necessarily varies according to circumstances, to whose influence the courts have been forced to yield, until there are so many real exceptions that the rules themselves can scarcely be said to have a general operation. * * * If the law furnishes no definition of the terms 'gross negligence,' or 'ordinary negligence,' which can be applied in practice, but leaves it to the jury to determine in each case what the duty was, and what omissions amount to a breach of it, it would seem that imperfect and confessedly unsuccessful attempts to define that duty had better be abandoned. Recently, the judges

of several courts have expressed their disapprobation of these attempts to fix the degrees of diligence by legal definitions, and have complained of the impracticability of applying them. Wilson v. Brett, 11 Mees. & W. 113; Wyld v. Pickford, 8 Mees. & W. 443, 461, 462; Hinton v. Dibbin, 2 Q. B. 646, 651. It must be confessed that the difficulty in defining 'gross negligence,' which is apparent in perusing such cases as Tracy v. Wood, 3 Mason, 132, and Foster v. Bank, 17 Mass. 479, would alone be sufficient to justify these complaints. It may be added that some of the ablest commentators on the Roman law and on the Civil Code of France have wholly repudiated this theory of three degrees of diligence, as unfounded in principles of natural justice, useless in practice, and presenting inextricable embarrassments and difficulties. See 6 Toullier, Droit Civil, p. 239, etc.; 11 Toullier, Droit Civil, p. 203, etc.; Makeldey, Man. Du Droit Romain, 191, etc." The New World v. King, 16 How. 469, 473, 474.

And in Railway Co. v. Arms, 91 U. S. 489, 494, the supreme court says:

"Some of the highest English courts have come to the conclusion that there is no intelligible distinction between ordinary and gross negligence. Redf. Carr. § 376. Lord Cranworth, in Wilson v. Brett, 11 Mees. & W. 113, said that gross negligence is ordinary negligence with a vituperative epithet; and the exchequer chamber took the same view of the subject. Beal v. Railway Co., 3 Hurl. & C. 337. In the common pleas, Grill v. Collier Co., (1866,) L. R. 1 C. P. 600, was heard on appeal. One of the points raised was the supposed misdirection of the lord chief justice, who tried the case, because he had made no distinction between gross and ordinary negligence. Justice Willes, in deciding the point, after stating his agreement with the dictum of Lord Cranworth, said: 'Confusion has arisen from regarding "negligence" as a positive, instead of a negative, word. It is really the absence of such care as it was the duty of the defendant to use. "Gross" is a word of description, and not of definition; and it would have been only introducing a source of confusion to use the expression "gross negligence" instead of the equivalent, "a want of due care and skill," in navigating the vessel, which was again and again used by the lord chief justice in his summing up.' 'Gross negligence' is a relative term. It is doubtless to be understood as meaning a greater want of care than is implied by the term 'ordinary negligence;' but, after all, it means the absence of the care that was necessary under the circumstances. * * *"

It can be said of the word "high," as is here said of "gross," that it is a word of description, and not of definition, and means nothing more than due care under the particular circumstances of the case; and "ordinary care" means the same. "Ordinary care or diligence" is defined to be such care or diligence as men of common prudence, under similar circumstances, usually exercise; and a "high degree of care," in this class of cases, means nothing more than that degree of care or diligence that would be exercised by men of common prudence under the like circumstances. In other words, what would be due or ordinary care at an unfrequented crossing in the country would not be due or ordinary care at a crossing much traveled in a town or its suburbs. But in both cases the care required is the care dictated by the exigencies of the occasion; and, whether called "high" or "ordinary," it is, at last, but due care, having reference to the situation, and it admits of no doubt that the jury understood the instructions in this sense.

The majority of the court attach more importance to a single epithet than to pages of accurate definition. The extremely fine distinction drawn by the majority of the court is too refined for the comprehension of a jury or for a rule of social conduct, and is

calculated to confirm an impression, already too prevalent, that the courts pay more regard to technicalities than to justice,—to form than to substance.

But, if a milder or stronger adjective ought to have been used, descriptive of the degree of care the plaintiff was required to exercise, the failure to use it was not assigned for error, and the court should not disregard one of its most wholesome rules when there is not the remotest probability that the supposed technical error had the slightest effect with the jury in making up their verdict.

The judgment of the court below ought to be affirmed.