CHICAGO, R. I. & P. RY. CO. v. CAULFIELD.

(Circuit Court of Appeals, Eighth Circuit. September 10, 1894.)

No. 415.

1. RAILROAD COMPANIES—INJURIES TO PERSONS ON TRACK — DEGREE OF CARE REQUIRED.

A locomotive engineer, approaching a place where a footpath crosses the track, is bound to exercise only ordinary care and watchfulness to discover and warn people and avoid injuring them; and an instruction which requires "all the care possible,"—the "highest possible care,"—and the amount of watchfulness necessary to discover a person on the track, is erroneous.

2. APPEAL—PREJUDICIAL ERROR—ERRONEOUS CHARGE.

It is sufficient to warrant a reversal that the charge was erroneous; that it may have misled the jury; and that it does not affirmatively appear that the misdirection was harmless. Railroad Co. v. McClurg, 8 C. C. A. 322, 59 Fed. 860.

3. DAMAGES FOR PERSONAL INJURIES—MENTAL SUFFERING.

Mental suffering induced by plaintiff's crippled condition, such as feelings of mortification because he is not sound in body and limb, cannot be considered in fixing the damages.

In Error to the Circuit Court of the United States for the Western District of Missouri.

This was an action by John J. Caulfield, by his next friend, Michael J. Caulfield, against the Chicago, Rock Island & Pacific Railway Company, to recover damages for personal injuries. Verdict and judgment were rendered for plaintiff, and defendant brought the case on error to this court.

Stephen S. Brown (J. E. Dolman, on the brief), for plaintiff in error.

C. A. Mosman and James C. Davis, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is a suit for personal injuries, which originated in the city of St. Joseph, Mo. The action was brought by John J. Caulfield, the defendant in error, against the Chicago, Rock Island & Pacific Railway Company, the plaintiff in error, in the circuit court for Buchanan county, state of Missouri, from whence it was removed to the United States circuit court for the western district of Missouri. It was tried in the latter court, and resulted in a verdict and judgment against the railway company. The errors that have been assigned relate to the instructions that were given by the trial court. A brief statement of the circumstances under which the injuries were sustained is essential to a correct understanding of the questions that we have to determine.

The accident occurred in a railroad yard in the city of St. Joseph, which appears to have been used in common by several railroad companies, about 6 o'clock p. m., on the evening of the 29th day of May, 1890. At that hour, one of the defendant company's engineers, who had charge of a switch engine, was taking the engine

to the roundhouse at the conclusion of the day's labor. At a certain point on the way to the roundhouse, where there were three tracks belonging to as many different railroads, which were laid side by side, was a footpath across these tracks, which was used by many people, especially in the morning and in the evening, when they were going to or returning from their place of work. Where this path led across the track, the plaintiff, John J. Caulfield, who was a boy between eight and nine years old, was run over by the switch engine in question, and was severely injured. Some distance to the north of the point where the accident occurred, the track on which the switch engine was moving on its way to the roundhouse was crossed obliquely by three other railroad tracks, and before going over that crossing, just prior to the accident, the switch engine stopped and whistled, as it was its duty to do, and then moved south over the crossing to the place where the plaintiff was run over and injured.

The engineer, with respect to his own conduct on that occasion, gave evidence tending to show that when he reached the aforesaid railroad crossing, and stopped to whistle, he saw a boy standing about $3\frac{1}{2}$ rail lengths south of the above-mentioned footpath; that the boy was standing at the time on the end of one of the ties of the Rock Island road, so near to the rail that he would be struck by the engine; that he kept his eye on the boy, and rang the engine bell, but that he seemed to pay no attention to the warning, whereupon an alarm whistle was sounded; that the boy then turned around, and looked at the engineer, who motioned to him with one hand, and that he then stepped off from the tie, and to a sufficient distance from the track to allow the engine to pass in safety; that he then started his engine forward, going at the rate of from three to four miles per hour; and that, when he came within ten or twelve feet of the boy, the latter started to run across the track immediately in front of the engine, whereupon, according to the engineer's statement, he reversed his engine, put on the vacuum brake, and stopped it as soon as possible, but not in time to avoid the injury. On the other hand, there was evidence in behalf of the plaintiff below which tended to show that the switch engine was running at the rate of from five to eight miles per hour, and that as it moved south over the railroad crossing above mentioned, and until it reached the footpath where the boy was hurt, the engineer in charge of the same was looking west at an excursion train, moving north on an adjoining track, and was not looking down the track in the direction in which the switch engine was moving, and that he did not give any proper signal to warn people who might be on the footpath of impending danger. The evidence for the plaintiff further tended to show that, at the same time, the boy was standing in the center of the Rock Island track, immediately in front of the approaching switch engine, and that he was also looking west in the direction of the excursion train, and was apparently unaware of the approach of the switch engine until it was too late to get off the track. It will thus be seen that the

evidence was conflicting, and that the case made by the plaintiff differed essentially from the case made by the defendant company. We have not thought it necessary to quote the charge of the court in full, as very much that was said is unexceptionable, and has not been challenged. The following excerpts therefrom embody the alleged errors which have been assigned. Speaking of the degree of care which the engineer of the switch engine was bound to exercise, the trial judge said: "If that was a passageway of that kind, and this plaintiff was upon that passageway, or near it, at the time of the injury, and the engineer in charge of that engine saw him, and he saw him in time to have prevented any injury to him by the exercise of that amount of care required by the law to be exercised, and that is the highest possible care under the circumstances' he could exercise in the management of his engine. We are to bear in mind that these engines are dangerous, and when they are so, and there is danger of their killing and maiming, the man in charge has to exercise all the care possible for him to exercise under the circumstances to prevent that calamity. Then, if he saw the plaintiff in time to have stopped his engine, in time to have prevented the injury by the exercise of that reasonable care which he is called upon to exercise in a case of that kind,—the highest possible care he could exercise under the circumstances,—that is exactly what a reasonable man would do when surrounded by such a condition, and it is that reasonable care which he is required to exercise." Furthermore, the court directed the jury that it was the duty of the engineer "to use the most effective means to prevent injury." It also said that, "if he failed of his duty by failing to exercise the amount of care necessary to discover the presence of the party, there would be a liability on the part of the company." For obvious reasons, we have not been able to approve the foregoing portions of the charge, which clearly imposed upon the defendant's engineer the duty of exercising "all the care possible * * *· to prevent the calamity," and "the highest possible care he could exercise under the circumstances," and which also seem to declare that the railway company was in any event liable if it failed to exercise the amount of watchfulness necessary to discover the presence of a party on its track. It does not seem to be seriously claimed by counsel for the defendant in error that the defendant company was bound to exercise that high degree of care which is indicated by the foregoing extracts from the charge, and it may be safely asserted that the authorities cited do not support such a contention. According to the great weight of authority, the engineer in charge of the switch engine was bound to exercise ordinary care and watchfulness, both in looking out for people who might be on the track at the place in question and in giving them timely warning of the approach of the engine, and in taking other reasonable precautions to avoid injuring them. In other words, the engineer was required to ·exercise that degree of care and skill which a person of ordinary prudence would have exercised at the time and place of the accident, having reference to the age and size of the boy who was seen in proximity to the

track. Guenther v. Railway Co., 108 Mo. 18, 18 S. W. 846; Prewitt v. Eddy, 115 Mo. 283, 21 S. W. 742; and cases cited; Railway Co. v. McElmurray (Tex. Civ. App.) 25 S. W. 324; Railway Co. v. McDonald, 75 Tex. 41, 12 S. W. 860.

In the respects above indicated, the charge of the trial court was undoubtedly erroneous, and we are unable to say that the error in question did not mislead the jury to the prejudice of the defendant company. Inasmuch as the court directed the jury that the defendant's engineer was bound to exercise the "highest possible care he could exercise under the circumstances," and inasmuch as the engineer testified that he saw the plaintiff when the switch engine must have been from 300 to 400 feet distant from where the accident occurred, it may have been that the jury found against the defendant because the engineer failed to take some precaution which, in the exercise of ordinary care, he was under no obligation to take. The jury may have thought that the engineer had no right to proceed with his engine, no matter how slowly, after discovering the boy in proximity to the track, until he had left that neighborhood and was entirely out of danger; or it may have been that the jury believed the engineer to have been guilty of some other slight error of judgment, which rendered him culpable within the stringent rule of liability announced by the trial court. But it is unnecessary to indulge in speculations of this nature. It is sufficient to warrant a reversal of the case that the charge was erroneous; that it may have misled the jury; and that it does not affirmatively appear that the misdirection was a harmless error. Railroad Co. v. McClurg, 8 C. C. A. 322, 59 Fed. 860.

As the case must be remanded for a new trial for the reasons heretofore indicated, it will be well to call attention to another exception taken to the charge of the trial court touching the assessment of damages, which also appears to us to be well taken. The court instructed the jury that, in assessing the plaintiff's damages, they had a right "to take into consideration his mental suffering because of his crippled condition, and to take into consideration his physical suffering endured by him while his wounds were healing." The allusion thus made to "mental suffering" induced by the plaintiff's crippled condition, as distinguished from "physical suffering," appears to have been to those feelings of mortification which the plaintiff might experience in after life because he was not sound in body and limb. If such was the idea intended to be conveyed by the instruction, then we think that the court erred in allowing the jury to assess damages of that nature. Bovee v. Danville, 53 Vt. 190. The judgment of the circuit court is reversed, and the cause is remanded, with directions to grant a new trial.