## PETTINE v. TERRITORY OF NEW MEXICO.

### (Circuit Court of Appeals, Eighth Circuit. October 21, 1912.)

### No. 3,617.

#### (Syllabus by the Court.)

1. CRIMINAL LAW (§ 1163*)—REVIEW—PREJUDICE FROM ERROR—PRESUMPTION.

The legal presumption is that error produces prejudice. It is only when the fact so clearly appears as to be beyond doubt that an erroneous ruling did not prejudice, and could not have prejudiced, the complaining party that the rule that error without prejudice is no ground for reversal is applicable.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3090–3099; Dec. Dig. § 1163.*]

2. CRIMINAL LAW (§§ 911, 942, 1156, 1176*)—NEW TRIAL—DISCRETION OF COURT—REVIEW—PREJUDICIAL ERROR.

On the trial of the defendant for murder in the first degree, the witnesses for the government had testified to a state of facts tending to show his guilt, and the defendant and his witnesses to a state of facts tending to show justifiable homicide, and the defendant had testified that he had never intended to kill the deceased until in fear of his life he fired to save it, when counsel for the prosecution asked him if he had not told one Campagnoli that he had intended to kill the deceased and two other men, but could not find them together, and he answered this question in the negative, and immediately rested his case. On rebuttal Campagnoli was called by the government, and testified that the defendant had made such a statement to him. There was a verdict of murder in the second degree. Thereafter the defendant made a motion for a new trial on the affidavit of Campagnoli that the defendant never made any such statement to him as he had testified to, that he was intoxicated when he gave his evidence, and after he became sober he knew that the defendant had never made any such statement, and upon the affidavit of the defendant to the same effect and that he had no notice or information that Campagnoli would testify as he did until he came upon the stand in rebuttal. The court denied this motion for a new trial.

*Held*: (1) It did not appear beyond doubt that this ruling did not prejudice and could not have prejudiced the defendant, but the record strongly indicated that the ruling was prejudicial error.

(2) It was a rule of the Supreme Court of the territory of New Mexico that a denial by the trial court of a motion for a new trial based upon facts not presented at the trial rested in the sound discretion of the trial court, but that an abuse of that discretion entitled the defeated party to a reversal of the order by the Supreme Court of the territory on an appeal or writ of error.

(3) The denial of the motion for a new trial by the trial court and its failure to grant the defendant a subsequent fair trial in which the false testimony of Campagnoli should be excluded from the minds of the triers was a gross abuse of its discretion fatal to the judgment below.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2134, 2316, 2331, 2332, 3067–3071, 3190, 3191; Dec. Dig. §§ 911, 942, 1156, 1176.*]

3. HOMICIDE (§ 295*)—TRIAL—INSTRUCTIONS—DEGREE OF OFFENSE.

Where the statute under which the defendant was prosecuted defined murder in the second degree so far as material to this case, to be murder which "shall be perpetrated in the heat of passion without design to effect death, but in a cruel and inhuman manner, or by means of a dangerous weapon, unless it is committed under such circumstances as constitute excusable or justifiable homicide," and declared that every killing by another which was not murder in the first or second degree and was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not excusable or justifiable homicide was murder in the third degree, it was prejudicial error to omit the words "in the heat of passion," and to charge the jury that murder in the second degree was "all murder which shall be perpetrated by means of a dangerous weapon, unless it is committed under such circumstances as constitute excusable or justifiable homicide."

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 600–609; Dec. Dig. § 295.*]

4. CRIMINAL LAW (§ 789*)—TRIAL—INSTRUCTIONS—REASONABLE DOUBT.

A charge that "a reasonable doubt is one for which a reason could be given based on the evidence or want of evidence in the case" destroys the rule of reasonable doubt, substitutes for a reasonable doubt a demonstrable doubt logically and conclusively sustained by the evidence or the want of it, and is error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1846–1849, 1904–1922, 1960, 1967; Dec. Dig. § 789.*]

5. CRIMINAL LAW (§ 1028*)—WRIT OF ERROR—PRESENTING QUESTIONS IN TRIAL COURT—NECESSITY.

In criminal cases in which the life or the personal liberty of the defendant is at stake, the courts of the United States, in the exercise of a sound discretion, may review and correct grave errors in the trials, although the questions they present are not raised by proper requests, objections, or exceptions in the trial court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2619, 2620; Dec. Dig. § 1028.*]

6. CRIMINAL LAW (§ 561*)—"REASONABLE DOUBT."

A reasonable doubt is such a doubt as would cause a prudent and rational man to act or to pause or hesitate to act in the determination of any of the affairs of life of the highest importance to himself.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1267; Dec. Dig. § 561.*

For other definitions, see Words and Phrases, vol. 7, pp. 5958–5972; vol. 8, p. 7779.]

In Error to the Supreme Court of the Territory of New Mexico.

Antimo Pettine was convicted of murder in the second degree, and brings error. Reversed and remanded, with directions to grant a new trial.

T. B. Catron, of Santa Fé, N. M., for plaintiff in error.

Frank W. Clancy, of Albuquerque, N. M., for the Territory.

Before SANBORN and CARLAND, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. This writ challenges the trial of Antimo Pettine, the defendant below, for murder in the first degree, his conviction of murder in the second degree, and his sentence therefor to imprisonment in the penitentiary for 45 years. After the verdict the defendant made a motion for a new trial, which was denied, and an appeal from the judgment was taken to the Supreme Court of the territory of New Mexico, which affirmed the rulings below, and that affirmance is now presented to this court for review.

The defendant was tried for shooting and thereby killing Mr. Be-

rardinelli "with malice aforethought and from a deliberate and premeditated design, unlawfully and maliciously to effect his death." Berardinelli was a quarrelsome man, who weighed about 200 pounds, and he had been drinking on the day of his death. He had previously threatened to kill the defendant, who was a small man, and he had been notified of the threat and warned to look out.

On the morning of the shooting Pettine was passing a store on his wheel in the street, when Berardinelli called him, and, after he had dismounted, Berardinelli charged him with writing a letter. Pettine denied the charge. Berardinelli then called him foul names, seized him, and rubbed the letter in his face, when bystanders interfered, caught and held Berardinelli, while Pettine mounted his wheel and escaped. Within an hour thereafter Pettine was again passing the store on his wheel in the street. He stopped and dismounted. Berardinelli advanced toward him threateningly. Pettine backed away and Berardinelli followed, and, when the latter was close upon the defendant, Pettine fired and killed him. The foregoing facts are established without contradiction or dispute. But the witnesses for the prosecution testified, that when Pettine came along the street the second time, he laid his wheel aside, called Berardinelli, and said he was ready, and told him to call him those names again if he desired to do so, that Berardinelli then advanced upon him, and Pettine retreated until he fired. On the other hand, Pettine and his witnesses testified that Berardinelli stopped Pettine on the street, and compelled him to dismount, that Pettine then retreated toward the other side of the street, and Berardinelli threateningly followed, and Pettine testified that he had been previously notified that Berardinelli had threatened to kill him; that as he came along the street Berardinelli rushed at him and compelled him to dismount from his wheel; that he did so and retreated toward the other side of the street and Berardinelli followed; that the latter was a powerful man, twice as large as he was; that he called upon the bystanders to catch him and keep him away and one of them testified that he took hold of and tried to hold Berardinelli, but that he tore himself away and went for Pettine. Pettine also testified that he backed away from Berardinelli; that he was afraid of him; that he told him to stop; that he warned him that he would shoot if he did not stop, but that he still advanced, and that when he was within six feet of him, in fear of his life, he fired to save it; and that he never intended to kill Berardinelli until forced to shoot to save himself. This was the state of the evidence when the defendant closed his case. The prosecution had then taken the evidence of four or five witnesses and the defendant the testimony of eight. Pettine was the last witness on his own behalf. Just before the close of his testimony, he was asked if he did not tell Luciano Campagnoli, in the latter's shop at Santa Fé, that he had intended to kill Berardinelli, Cæsar Grande, and Charles Grande, but that he had never been able to get them together, and he answered that question in the negative. On rebuttal counsel for the prosecution called Campagnoli, who testified that about three months after the shooting Pettine, whom he had never seen before, came into his shop

in Santa Fé and told him that he had killed Berardinelli, that he had intended to kill him and Cæsar Grande and Charles Grande, but had never been able to get them together. Campagnoli further testified that no one but himself and Pettine were present when the latter made this statement. Pettine in surrebuttal testified that he never was in Campagnoli's shop, and that he never had any conversation with him. Upon this evidence the case went to the jury. After the verdict Campagnoli made an affidavit that Pettine never came into his shop and made the statement to which he, Campagnoli, had testified; that he was intoxicated when he so testified; that he subsequently became sober and became acquainted with Pettine; and that he then knew that the latter had never been in his shop, and had never made the statements to which he testified. Pettine made an affidavit that he had never made any such statements and that he never intended or wished to kill either of the Grandes or to kill Berardinelli until he believed it necessary at the moment of the shooting to fire upon him to protect his own life or to save himself from great bodily harm; that he had no knowledge or information whatever that Campagnoli would testify as he did until he gave his testimony at the close of the trial; and that, as he testified that no one but himself and Pettine were present when the statements to which he testified were made, he had no way to disprove his testimony but by his own denial. One of the grounds of the defendant's motion for a new trial which was supported by these affidavits was the submission of this case to the jury upon this false testimony of Campagnoli. It is assigned as error that the trial court overruled the motion, and that the Supreme Court of the territory of New Mexico affirmed that ruling.

[1] It is suggested in answer that if this ruling was error it was not prejudicial because the testimony of Campagnoli went only to the defendant's preconceived intention to kill, and the jury by its verdict of murder in the second degree, instead of in the first degree, as charged, found that he had no such intention. But the legal presumption is that error produces prejudice, and it is only when the fact so clearly appears as to be beyond doubt that an error challenged did not prejudice, and could not have prejudiced, the complaining party, that the rule that error without prejudice is no ground for reversal is applicable. Deery v. Cray, 5 Wall. 795, 807, 808, 18 L. Ed. 653; Peck v. Heurich, 167 U. S. 624, 629, 17 Sup. Ct. 927, 42 L. Ed. 302; Smith v. Shoemaker, 17 Wall. 630, 639, 21 L. Ed. 717; Moores v. Bank, 104 U. S. 625, 630, 26 L. Ed. 870; Gilmer v. Higley, 110 U. S. 47, 50, 3 Sup. Ct. 471, 28 L. Ed. 62; Railroad Co. v. O'Brien, 119 U. S. 99, 103, 7 Sup. Ct. 118, 30 L. Ed. 299; Mexia v. Oliver, 148 U. S. 664, 673, 13 Sup. Ct. 754, 37 L. Ed. 602; Railroad Co. v. O'Reilly, 158 U. S. 334, 337, 15 Sup. Ct. 830, 39 L. Ed. 1006; Railroad Co. v. McClurg, 8 C. C. A. 322, 325, 326, 59 Fed. 860, 863; Association v. Shryock, 20 C. C. A. 3, 11, 73 Fed. 774, 781; Railroad Co. v. Holloway, 52 C. C. A. 260, 114 Fed. 458; Armour & Co. v. Russell, 75 C. C. A. 416, 144 Fed. 614, 615, 6 L. R. A. (N. S.) 602.

[2] The main issue at the close of the trial of this case was

whether the killing of Berardinelli was murder or justifiable homicide. The answer to that question hinged on the truth of Pettine's testimony. If his testimony and that of his witnesses was true, the killing was justifiable homicide, and he was entitled to a verdict of acquittal. If it was false, he was guilty of murder. It was for the sole purpose of impeaching him and destroying the effect of his testimony that Campagnoli's testimony was introduced by the prosecution in the last moments of the trial without warning to the defendant or opportunity for him adequately to meet it. That testimony was in effect that Pettine had deliberately testified falsely as to his preconceived intention, and it subjected all his testimony to the familiar rule that, when the jury believe from the evidence, that a witness has knowingly testified falsely upon a material issue they may disregard his testimony upon all other issues, unless it is satisfactorily corroborated. The fact that the jury failed to find that Pettine was guilty of murder in the first degree as charged is a demonstration that the issue on the truth of his testimony was a doubtful one. He was entitled to an acquittal unless the evidence proved him guilty of some degree of murder beyond a reasonable doubt. Who can say that this false testimony of Campagnoli, directly impeaching Pettine and contradicting his testimony on the great issue at the trial, his preconceived intention, was not the very evidence which removed the reasonable doubt whether his testimony that at the second encounter he was the assailed and not the assailant was true, and prevented his acquittal. The legal presumption is that this false testimony was prejudicial, and it is far from clear beyond doubt that it was not crucial evidence without which Pettine's evidence would have been believed, the killing would have been found to be justifiable homicide, and he would have been acquitted.

It was an established and settled rule of the Supreme Court of the territory of New Mexico that the denial by the trial court of a motion for a new trial based upon facts not presented at the trial rests in the sound discretion of the trial court, but that an abuse of that discretion entitles its victim to a reversal of the order by the Supreme Court of the territory on appeal or writ of error. United States v. Lewis, 2 N. M. 459, 462; Roper v. Territory, 7 N. M. 255, 263, 266, 33 Pac. 1014; United States v. Biena, 8 N. M. 99, 105, 42 Pac. 70; Territory v. Emilio, 14 N. M. 147, 159, 89 Pac. 239. In the case at bar that court, in accordance with this rule, considered the question whether or not the denial of the motion in this case was such an abuse, and declined to decide it on the ground that the testimony of Campagnoli could not have affected the verdict because there was ample evidence to sustain it without that testimony. Territory v. Pettine, 16 N. M. 40, 113 Pac. 843, 845. But that court was without jurisdiction on the sharp conflict of testimony here to determine the guilt or innocence of the defendant, or the sufficiency of a part of the evidence before the jury to sustain the verdict they rendered. The question for it to determine was not whether a part of that evidence would satisfy the minds of its members of the guilt or

innocence of the accused, for the jury alone had jurisdiction of that question. The only question of which the Supreme Court of New Mexico had jurisdiction was the question whether or not the defendant had had a fair and impartial trial without error according to law. Under the Constitution of the United States, the defendant had the right to a fair and impartial trial of the issue of his guilt or innocence by a jury of his peers without error of law and according to the course of the common law. He had the right to an acquittal of the charge against him unless the legal evidence satisfied the jury, not the appellate court, of his guilt beyond a reasonable doubt. The evidence on this issue was conflicting with little, if any, preponderance against him, when the false testimony of Campagnoli was thrown into the balance, and he was sent to the penitentiary for 45 years. Was that a fair trial in which this false testimony was thrown into the wavering balance at the close of the trial too late for the defendant to demonstrate its falsity? Is it clear beyond doubt that this testimony did not turn the scales against him or remove from the mind of some juror a reasonable doubt of his guilt? Can it be truthfully said that it was not a gross abuse of its discretion for the trial court to refuse to grant a new trial here and to refuse to exclude this false testimony from the minds of the triers of this fateful issue on which 45 years of the life of the defendant hung? The penalty the defendant was adjudged to suffer is heavy, the issue here presented is grave, and the conclusion derived from a careful reading and consideration of all the evidence in this case is that each of those questions should have been answered in the negative, and that the Supreme Court of the territory erred in its affirmance of the denial of the motion for a new trial.

[3] The statutes of the territory of New Mexico divide murder into three degrees, which they carefully define. So far as those definitions are material to the issues in this case, murder "perpetrated from a deliberate and premeditated design, unlawfully and maliciously to effect the death of any human being" was murder in the first degree; murder "perpetrated in the heat of passion without design to effect death, but in a cruel and unusual manner, or by means of a dangerous weapon, unless it is committed under such circumstances as constitute excusable or justifiable homicide," was murder in the second degree; and "every killing of a human being by the act, procurement or culpable negligence of another, which under the provisions of this act is not murder in the first or second degrees and which is not excusable or justifiable homicide," was murder in the third degree. Compiled Laws of New Mexico, 1897, §§ 1063, 1064, 1065. The defendant was indicted for murder in the first degree, and it was the privilege and duty of the jury to determine whether he was innocent or was guilty of one of these three degrees of murder. It is assigned as error that the court entirely withdrew from the jury the consideration of the question whether or not he was guilty of murder in the third degree, so that under its charge they were restricted to a finding that he was innocent or was guilty of murder in

either the first or second degree. The charge upon this subject, so far as material to this question, was as follows:

"Murder in the first degree, as so defined, and as related to the circumstances of this case, is 'all murder which shall be perpetrated * * * from a deliberate and premeditated design, unlawfully and maliciously to effect the death of any human being.'

"Murder in the second degree is 'all murder which shall be perpetrated by means of a dangerous weapon, unless it is committed under such circumstances as constitute excusable or justifiable homicide, or which shall be perpetrated unnecessarily, either while resisting an attempt by the person killed to commit any offence against person or property, or after such attempt shall have failed. The absence of deliberate premeditated design is what chiefly distinguishes it from murder in the first degree.'

"Murder in the third degree is every killing of a human being which under the provisions of this act is not murder in the first or second degrees, and which is not excusable or justifiable homicide as now defined by law."

The assignment here made is well founded. The charge omits from the statutory definition of murder in the second degree by means of a dangerous weapon the words "in the heat of passion," and thus declares that all murder with a dangerous weapon without design to effect death which is not excusable or justifiable homicide is of the second degree, while the truth was, so far as material to this case, that murder with a dangerous weapon without design to effect death perpetrated in the heat of passion only was of the second degree and all murder perpetrated with a dangerous weapon which was committed without design to effect death and without the heat of passion was murder in the third degree. This was a palpable and crucial error, for the evidence was conclusive that the killing was perpetrated with a dangerous weapon and the charge that all murder with a dangerous weapon which was not of the first degree was of the second degree when the fact was that murder with a dangerous weapon without design to effect death which was not perpetrated in the heat of passion was of the third degree completely deprived the defendant of his right to a determination by the jury of the question whether the crime which they found he committed was murder in the second or in the third degree.

[4] It is specified as error that the court charged the jury that "a reasonable doubt is one for which a reason could be given based on the evidence or want of evidence in the case." This instruction has been the subject of continuous and frequent challenge, and there is a conflict of authority over the question of its accuracy. It has been sustained in Griggs v. United States, 158 Fed. 572, 577, 578, 85 C. C. A. 596. It may be found in instructions given to the jury by trial courts where it does not seem to have been questioned, in United States v. Stevens, Fed. Cas. No. 16,392, United States v. Johnson (C. C.) 26 Fed. 682, 685, United States v. Jackson (C. C.) 29 Fed. 503, and United States v. Cassidy (D. C.) 67 Fed. 698, 782, and it has been approved in Wallace v. State, 41 Fla. 580, 584, 26 South. 713, People v. Guidici, 100 N. Y. 509, 510, 3 N. E. 493, Butler v. State, 102 Wis. 368, 369, 78 N. W. 590, State v. Grant, 20 S. D. 168, 105 N. W. 97, 11 Ann. Cas. 1017, and other decisions from the states

above named. On the other hand, this instruction has been held to be fatal error in Owens v. United States, 130 Fed. 279, 283, 64 C. C. A. 525, 529, Siberry v. State, 133 Ind. 677, 33 N. E. 681, 684, Avery v. State, 124 Ala. 20, 21, 22, 27 South. 505, 506, Morgan v. State, 48 Ohio St. 371, 27 N. E. 710, 712, Cross v. State, 132 Ind. 65, 31 N. E. 473, 474, Cowan v. State, 22 Neb. 519, 35 N. W. 405, Carr v. State, 23 Neb. 749, 37 N. W. 630, State v. Cohen, 108 Iowa, 208, 78 N. W. 857, 75 Am. St. Rep. 213, and State y. Lee, 113 Iowa, 348, 85 N. W. 619.

[6] A reasonable doubt is such a doubt as would cause a prudent and rational man to act or to pause or hesitate to act in the determination of any of the affairs of life of the highest importance to himself. This and similar definitions of reasonable doubt which have received the repeated and unquestioned approval of the highest courts in the land are easily accessible in the reports. Hopt v. Utah, 120 U. S. 430, 439, 7 Sup. Ct. 614, 30 L. Ed. 708; Commonwealth v. Webster, 5 Cush. (Mass.) 295, 320, 52 Am. Dec. 711; State v. Pierce, 65 Iowa, 85, 21 N. W. 195; People v. Dewey, 2 Idaho (Hasb.) 83, 6 Pac. 103; Leonard v. Territory, 2 Wash. T. 381, 7 Pac. 872. In the trial of an important case it is unwise to depart from established and approved definitions to doubtful declarations and novel theories.

In a criminal case the presumption of innocence accompanies the defendant throughout the trial. The burden is on the government to overcome this presumption, to produce evidence that will satisfy the minds of the jury beyond a reasonable doubt of the guilt of the accused. The burden is upon the prosecution to furnish to the jury by the evidence it produces, sound reasons for the conviction of the defendant, reasons that shall produce and maintain in their minds an abiding conviction of his guilt to a moral certainty. Now to say that a doubt of the guilt of an accused person which a juror may indulge is not a reasonable doubt unless he can give a reason for it based on the evidence or want of it is to reverse this established rule, and to put upon the accused the burden of furnishing the jury with a reason for his acquittal; for, if the juror must give a reason for his doubt, he must give a sound reason, or this new rule is idle and ineffective. If no juror who has a doubt of the guilt of the accused may lawfully vote for his acquittal unless he can give a sound reason for his doubt based on the evidence or the want of it, the question immediately arises whether this reason must be sound in his own opinion only, or in the opinion of his fellow jurors, or of the judge, and, once adopt this rule and instructions on this subject must inevitably multiply and add dialectics and confusion to the rule and its application. The ability to give sound reasons for their doubts or their beliefs is not given to many men, and every prudent and thoughtful man at once recognizes the fact that in the graver and more important affairs of his own life doubts for which he can formulate no convincing reason often induce him to act or to refuse to act. To require every person accused of crime to present such a state of evidence at his trial that every juror can give a sound reason based on the testimony for his doubt of his guilt before he may vote for his acquittal

places too heavy a burden on the accused. It destroys the rule of reasonable doubt, and substitutes for a reasonable doubt a demonstrable doubt logically and conclusively sustained by the evidence or the want of it. The court below was in error when it placed this heavy burden upon the defendant, and charged the jury that a reasonable doubt was one for which a reason could be given founded on the evidence or the want of it.

[5] The Supreme Court of New Mexico disregarded the two errors which have been last discussed because they were not properly presented to the trial court by suitable requests, objections, and exceptions. But in criminal cases where the life, or as in this case the liberty, of the defendant for the probable remainder of his natural life is at stake the courts of the United States in the exercise of a sound discretion may notice grave errors in the trial of a defendant although the questions they present were not properly raised in the trial court by request, objection, or exception. Wiborg v. United States, 163 U. S. 632, 658, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289; Clyatt v. United States, 197 U. S. 207, 221, 25 Sup. Ct. 429, 49 L. Ed. 726; Crawford v. United States, 212 U. S. 183, 194, 29 Sup. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392; Weems v. United States, 217 U. S. 349, 362, 30 Sup. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705; Williams v. United States, 158 Fed. 30, 36, 88 C. C. A. 296, 302; Humes v. United States, 182 Fed. 485, 486, 105 C. C. A. 158, 159. The liberty of the defendant below for more than four decades, if he should so long live, probably depends upon the decision of this case. He may not be deprived of this liberty lawfully without a fair trial free from error according to the course of the common law.

For the reasons that have been stated, the record in this case has convinced that he has not received such a trial, the judgment below is therefore reversed, and the case is remanded, with directions to set aside the verdict and grant a new trial.