GULF, COLORADO & SANTA FE RAILWAY COMPANY v. W. W. DICKENS.

Decided March 31, 1909.

### 1.—New Trial—Juror—Examination—Previous Opinion.

Where a juror who had testified upon his voir dire that he knew nothing about the merits of the case, and had no opinion about it nor bias in favor of either party, was shown upon motion for new trial to have stated to others about a week previous that plaintiff ought to have what he was suing for, new trial should have been granted. The juror having explicitly denied such conversation, the court, accepting it as proven, was not justified in assuming that it was so unimportant that the juror had forgotten it and that he had no opinion or bias when accepted as a juror.

### 2.—Same—Challenge for Cause.

A juror who has expressed an opinion about the merits of a case may be challenged for cause under the general power given the court by arts. 3208, 3209, Revised Statutes, though the statute does not expressly make this a ground for challenge.

### 3.—Damages—Mental Suffering—Argument of Counsel.

The mental suffering resulting from injuries to the person for which recovery may be allowed, does not include purely sentimental feelings, such as the injured person might experience on meeting a friend or a stranger, arising from the fact that he had become an object of pity, sympathy or curiosity by reason of his injuries. See argument of counsel held improperly permitted because urging such mental suffering as a legitimate basis for damages.

### 4.—Master and Servant—Assumed Risk—Safe Place to Work—Statute.

The Act of April 24, 1905, modifying the common law rule as to risks assumed by servants is not limited, in its application, to defects in dangerous machinery, but applies in the case of a negligent failure of the master to furnish the servant a safe place to work, as where a switchman was injured in coupling a car by his foot slipping into a hole near the track.

### 5.—Master and Servant—Negligence—Charge—Approaches to Railroad.

In an action by a railway switchman to recover for injuries caused by negligence in permitting a hole to exist by the side of the track, into which his foot slipped while coupling cars, a charge making it the duty of defendant to keep the approaches to its railroad track in a reasonably safe condition is to be understood as applicable to the places where its servants must approach the track when engaged in their work and not as referring to the approaches of highway crossings.

### 6.—Negligence—Choice of Dangerous Methods—Charge.

A requested instruction taxing plaintiff with negligence in making a coupling from the ground rather than from a safe position upon the car, was properly refused where the evidence presented a question of fact as to whether it was not necessary to perform the act in the way selected.

**7.—Walking between Moving Cars.**

A requested instruction denying recovery to a switchman who was injured while walking between moving cars if the position was dangerous and proximately contributed to the accident was properly refused because it assumed that walking between the cars constituted contributory negligence.

**8.—Negligence—Defective Coupling Apparatus—Pleading.**

Evidence that the coupling apparatus of cars was broken or defective could be received to explain the conduct of plaintiff injured while walking between the cars making a coupling, though negligence in providing a safe place to work, and not defects in the coupling, constituted the ground relied on for recovery.

**9.—Pleading—Variance.**

Evidence in regard to the manner in which plaintiff received his injuries held to constitute no variance from the allegations in his petition.

Appeal from the District Court of Bell County. Tried below before Hon. John M. Furman.

*Terry, Cavin & Mills* and *A. H. Culwell,* for appellants.—Where danger is open, patent and visible, and the servant continues to work under these conditions and surroundings, he assumes the risk of all accident resulting therefrom, and in the case at bar, the condition of appellant's yard, at and near the place of accident, was open, patent and visible, and appellee continued to work therein, and under these circumstances he ought to be held to have assumed the risk of injury resulting therefrom. Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Texas, 73; Galveston, H. & S. A. Ry. Co. v. Lempe, 59 Texas, 19; Texas & N. O. Ry. Co. v. Conroy, 83 Texas, 215; Texas & P. Ry. Co. v. French, 86 Texas, 96; Currie v. Missouri, K. & T. Ry. Co., 20 Texas Ct. Rep., 686; St. Louis S. W. Ry. Co. v. Briscoe, 100 Texas, 354; St. Louis S. W. Ry. Co. v. Rea, 99 Texas, 58; Kansas City S. Ry. Co. v. Williams, 111 S. W., 196; Houston & T. C. Ry. Co. v. Conrad, 62 Texas, 629; International & G. N. R. Co. v. McCarthy, 64 Texas, 636; Rogers v. Galveston City Ry. Co., 76 Texas, 506; Mexican National Ry. Co. v. Shean, 18 S. W., 151; Missouri, K. & T. Ry. Co. v. Spellman, 34 S. W., 298; Houston & T. C. Ry. Co. v. McNamara, 59 Texas, 257; Southwestern T. & T. Co. v. Tucker, 110 S. W., 487.

Where an employe remains in the service of the employer after the discovery of anything connected with the place of work or service affecting his safety and rendering his employment more than ordinarily dangerous, he assumes all the risks of the increased dangers; and in this case, appellee did know of the general condition of the yards and of the dangers incident to working therein. He thereby assumed the risk of continuing in that service, and this accident having occurred as a result thereof, he is not in a position to complain. Missouri Pac. Ry. Co. v. Somers, 78 Texas, 439; Green v. Cross & Eddy, 79 Texas, 130; Missouri Pac. Ry. Co. v. Somers, 71 Texas, 700; Crawford v. Houston & T. C. Ry. Co., 89 Texas, 89; Texas & P. Ry. Co. v. Bryant, 8 Texas Civ. App., 134; Missouri, K. & T. Ry. Co. v. Wood, 35 S. W., 879; Texas & N. O. Ry. Co. v. Bingle, 9 Texas Civ. App., 322; St. Louis S. W. Ry. Co. v. Hynson, 21 Texas Ct. Rep., 56; Houston, E. & W. T. Ry. Co. v. De Walt, 96 Texas, 121; Missouri, K. & T. Ry. Co. v. Thompson, 11 Texas Civ. App., 658; Robinson v. Ft. Worth & R. G. Ry. Co., 99

Texas, 110; St. Louis & S. F. Ry. Co. v. Mathis, 101 Texas, 342; Lovejoy v. B. & L. Ry. Co., 125 Mass., 79; Texas & P. Ry. Co. v. Bradford, 66 Texas, 732; Brossman v. L. V. Ry. Co., 6 Atl., 226; Gulf, C. & S. F. Ry. Co. v. Williams, 72 Texas, 159; International & G. N. R. Co. v. Rogol, 11 Texas Ct. Rep., 369; Batterson v. G. T. Ry. Co., 18 N. W., 584; Carlson v. O. S. L. Ry. Co., 28 Pac., 497; E. T. V. & G. Ry. Co. v. Reynolds, 20 S. E., 70; Rains v. Railway Co., 71 Mo., 164; Clark v. Railway Co., 9 N. W., 581; O'Neill v. C., I. C. Ry. Co., 31 N. E., 669; Williams v. O. S. L. Ry. Co., 28 Pac. 625; S. P. Co. v. Burk, 60 Fed., 711; Knight v. Cooper, 14 S. E., 999; Columbia v. McElligott, 117 U. S., 621.

The Assumed Risk Act of 1905 does not apply to this case, and does not furnish any criterion as to the law, for the reason that said Act only applies to and covers those employes who are operating dangerous machinery, and same has no reference whatever, and does not apply to a place to work. This is manifest from the Act itself, and especially the second section thereof. Appellee's evidence shows that he was injured by reason of the condition of the place where he worked, and not through any defect of dangerous machinery.

[Tenth assignment of error.]—The court erred in failing and refusing to give defendant's special charge No. 7, which was as follows: "If you find and believe from the evidence that it would have been safer for the plaintiff in making the uncoupling on the north side of the train to hang on to the side of the car and not alight on the ground, and that a man of ordinary prudence would not have alighted on the ground in attempting to make the uncoupling, and that the fact that plaintiff did alight on the ground and attempt to make the uncoupling contributed to the accident, then you are directed that he can not recover." Earle v. Thomas, 14 Texas, 592; Burke v. Holmes, 68 S. W., 52.

[Eleventh assignment of error.]—The court erred in failing and refusing to give defendant's special charge No. 11, which was as follows: "You are instructed that if you find from the evidence, by a preponderance of the same, that the plaintiff was injured by stepping or falling into a hole, as he alleges in his petition, but further find that at the time he did so he was walking between the moving cars and that same was dangerous and proximately contributed to the accident, you are instructed that the plaintiff would be guilty of contributory negligence, as defined in the general charge herein given, and, if you so find, you will render a verdict for the defendant railway company."

The court erred in permitting plaintiff's counsel to use language which was without evidence to sustain the same. It was based on a theory that had no place in this case, and called the attention of the jury to theories which ought not to have been considered. Western U. Tel. Co. v. Wingate, 6 Texas Civ. App., 394; Dillingham v. Scales, 78 Texas, 205; Gulf, C. & S. F. Ry. Co. v. Scott, 7 Texas Civ. App., 619; Galveston, H. & S. A. Ry. Co. v. Washington, 42 Texas Civ. App., 380; Hunstock v. Roberts, 3 Texas Ct. Rep., 650; Garrity v. Rankin, 55 S. W., 367; Ft. Worth & D. Ry. Co. v. Johnson, 5 Texas Civ. App., 15; Chicago, R. I. & P. Ry. Co. v. Langston, 92 Texas, 729; Moss v. Sanger, 75 Texas, 322; Gulf, C. & S. F. Ry. Co. v. Jones, 73 Texas,

235; Beeville v. Jones, 74 Texas, 154; Rotan v. Madegen, 24 Texas Civ. App., 561; Ft. Worth & D. C. Ry. Co. v. Burton, 25 Texas Civ. App., 63; Western Union Tel. Co. v. Perry, 95 Texas, 645; Chicago, R. I. & T. Ry. Co. v. Musick, 33 Texas Civ. App., 177; Telegraph Co. v. Burgess, 1 Texas Ct. Rep., 728.

It having appeared from plaintiff's testimony that the accident occurred in a manner far remote from anything connected with the coupling apparatus, it was error for the court to permit the plaintiff to testify as to the bad condition of the lock block or the coupling apparatus. Same tended only to confuse the minds of the jury and to create a prejudice against the defendant herein. Texas & P. Ry. Co. v. Bigham, 90 Texas, 223; Neeley v. Ft. Worth & R. G. Ry. Co., 96 Texas, 274; L. & P. Co. v. Lefevre, 93 Texas, 607; Dobbins v. Missouri, K. & T. Ry. Co., 91 Texas, 60; Galveston, H. & S. A. Ry. Co. v. Kieff, 94 Texas, 338; Southwestern T. & T. Co. v. Keys & Casey, 110 S. W., 767; Rose v. Gulf, C. & S. F. Ry. Co., 17 S. W., 789; Texas & P. Ry. Co. v. Doherty, 15 S. W., 44, 4 Texas C. C. (Willson), 231; Smith v. Texas & P. Ry. Co., 24 Texas Civ. App., 92; Seale v. Gulf, C. & S. F. Ry. Co., 65 Texas, 274.

[Twenty-third assignment of error.]—The court erred in failing to set aside the verdict herein rendered and to grant the defendant a new trial on the forty-eighth ground of its amended motion therefor, which was as follows: "Defendant says that the verdict and judgment rendered herein ought to be set aside because there is a fatal variance between the allegations of plaintiff's amended petition as to how this accident occurred and the testimony of the plaintiff upon the same subject, and the verdict of the jury in this regard is not founded upon the court's charge in this, that it is charged in plaintiff's amended petition that the injuries sustained by the plaintiff were occasioned because he slipped into and was caught in a hole between the ties and under the railing, and that he was thereby caused to fall under the cars and mashed, bruised and injured, as alleged, whereas, as sworn by the plaintiff, he only lost one arm by reason of his fall under the cars. The rest of the injuries sustained by the plaintiff were sworn by the plaintiff to have been occasioned by his being caught in the cotter-key under the truss rod and pulled under the car.

The act of the juror Wynn in making the statement to the jury or certain members thereof, as to offers of compromise made by defendant, was highly prejudicial to the interest of the defendant. It carried with it the idea that defendant was admitting liability. It was the receipt by said jurors of other and further evidence, and was misconduct of such a character as should vitiate the verdict, and the lower court should have granted a new trial because thereof. Gulf, C. & S. F. Ry. v. Schroder, 25 S. W., 306; Burleson v. State, 15 S. W., 175; Terry v. State, 38 S. W., 986; McKissic v. State, 26 Texas App., 677; Hargrove v. State, 33 Texas Crim., 455; Tate v. State, 38 Texas Crim., 261; Blalock v. State, 62 S. W., 571; Greene v. Hill, 4 Texas, 465; Galveston, H. & S. A. Ry. Co. v. Washington, 42 Texas Civ. App., 380; Marshall v. Watson, 16 Texas Civ. App., 127; Palm v. Chernowsky, 67 S. W., 165, 28 Texas Civ. App., 405; Gulf, C. & S. F. Ry. Co. v. Matthews, 28 Texas Civ. App., 92; Bohn v. C. & N. W. Ry. Co., 78

N. W., 200; Coffin v. Gephart, 18 Iowa, 256; Dorrance v. Preston, 18 Iowa, 396; Chapter 18, page 21, Legislative Acts of 1905.

Where on motion for new trial it develops that a juror on his voir dire has not truthfully answered questions propounded to him touching his service and qualification as a juror, and that by reason thereof appellant has been deceived, without fault, it is the duty of the court, on motion for new trial, to set aside the verdict, and it was error in this instance for the court to overrule this ground of defendant's motion for new trial. McGehee v. Shafer, 9 Texas, 20; Wooters v. Craddock, 46 S. W., 916; Hughes v. State, 43 Texas Crim., 513; Hanks v. State, 21 Texas, 526; Boren v. State, 23 Texas Crim., 28; Blanton v. Mays, 72 Texas, 421; Henry v. State, 41 Texas, 573; Galveston, H. & S. A. Ry. Co. v. Washington, 42 Texas Civ. App., 380; Thompson on Juries, 226; Pearcey v. Life Ins. Co., 111 Ind., 59; Venum v. Harwood, 6 Ill., 659; Coughlin v. People, 144 Ill., 140; Hudspeth v. Herston, 64 Ind., 133.

*A. L. Curtis* and *Winbourn Pearce,* for appellee.—It was the duty of the master to exercise ordinary care to furnish the servant with a reasonably safe place to work, and the servant owed no duty of inspection, but he had a right to rely upon the fact that the master had done its duty in this respect. Railway Co. v. Hannig, 91 Texas, 347; Galveston, H. & S. A. Ry. Co. v. Smith, 24 Texas Civ. App., 127; Missouri, etc., Ry. Co. v. Baker, 58 S. W., 964; Texas, etc., Ry. Co. v. Bingle, 91 Texas, 287; Bonnet v. Galveston, etc., Ry. Co., 89 Texas, 72; Gulf, etc., Ry. v. Warner, 22 Texas Civ. App., 172; Railway Co. v. Davidson, 107 S. W., 949; Missouri, etc., Ry. v. Cox, 55 S. W., 356; Bookrum v. Galveston, etc., Ry. Co., 57 S. W., 919; Railway Co. v. Davis, 80 S. W., 353; San Antonio, etc., Ry. Co. v. Engelhorn, 24 Texas Civ. App., 324; Gulf, etc., Ry. Co. v. Gray, 63 S. W., 930.

The charge of the court as given, on the law of assumed risk, has been approved in an unbroken line of decisions, and was the law even prior to the adoption of the assumed risk Act, in 1905, and was far more favorable to appellant than it was entitled to under said Act. None of the charges requested by appellant are the law under the assumed risk Act. The Act, while leaving contributory negligence perfectly intact, practically abolished the defense of assumed risk by making the question one of contributory negligence in every case. Texas & N. R. Co. v. Barwick, 110 S. W., 956; Acts of Twenty-ninth Leg., chap. 163; Railway Co. v. Mathis, 101 Texas, 342; Railway Co. v. Trijerina, 111 S. W., 239.

Appellant failed to prove any such misconduct of the jury during their deliberation as would entitle it to a new trial. No additional evidence was heard or received by the jury. The court below heard all the evidence and found against appellant upon every material issue alleged in its motion; this was a matter entirely within the discretion of the trial court, and no abuse of that discretion has been shown. Gulf, C. & S. F. Ry. Co. v. Blue, 46 Texas Civ. App., 239; Foley v. Northrup, 47 Texas Civ. App., 277.

It was proven that the juror Wynn was in no way incompetent or

disqualified. The trial court overruled the motion generally without making any finding of fact. Rogers v. State, 40 Texas Crim., 355; Wallace v. State, 50 Texas Crim., 374; Kegans v. State, 95 S. W., 122; Mayes v. State, 24 S. W., 421, 33 Texas Crim., 33; Driver v. State, 38 S. W., 1020, 37 Texas Crim., 160; Murphy v. State, 40 S. W., 978.

The verdict in this case is fully sustained by the evidence and is not excessive. Railway Co. v. Shelton, 69 S. W., 657; Waters-Pierce Oil Co. v. Snell, 47 Texas Civ. App., 413; Phillips v. London R. Co., 5 C. P. D., 280; Smith v. Whittier, 25 Cal., 279; Railway Co. v. Friedman, 41 Ill., 270, 14 N. Y. Supp., 336, 131 N. Y. Supp., 576, 65 N. Y. Supp., 1093, 53 App. Div. (N. Y.), 399, 18 Ill. App., 418.

FISHER, CHIEF JUSTICE.—This is a suit by appellee for the recovery of damages on account of personal injuries received while engaged in the service of appellant as a switchman at Temple, Texas. It is alleged that while he was engaged in the service of switching cars he was caused to fall under the train, by reason of which he received serious and permanent injuries.

The negligence charged is that while he was in the performance of his duty in coupling a car his foot slipped into a hole which was negligently permitted to be and remain near the railway track, and that the railway company failed to furnish him a safe place at which to work.

Appellant answered by general and special exceptions, general denial, pleas of contributory negligence and assumed risk.

Verdict and judgment below were in appellee's favor against the railway company for the sum of $37,500.

Appellant's twenty-seventh and twenty-eighth assignments of error are to the effect that the trial court erred in refusing to grant appellant's motion for a new trial on account of the fact that one B. T. Wynn, who was a juror at the trial and participated in finding and returning the verdict against the appellant, was not a fair and impartial juror, in that he entertained a bias in favor of the plaintiff, and that he had, prior to the trial, expressed an opinion about the merits of the case, wherein he had substantially stated to one W. P. Cox and J. L. Durden that Dickens ought to recover the amount he had sued for, to wit, $50,000 or $60,000; that the juror on his voir dire was especially interrogated as to the fact whether he entertained any prejudice or bias for or against either of the parties to the suit, and whether he had entertained or had expressed an opinion as to the merits, all of which he answered in the negative; that neither the appellant nor any of its attorneys had any notice or knowledge of the fact that the juror was not a fair and impartial juror, and that he had had the conversation with Cox and Durden as stated, until after the trial; that if they had known at the time of his examination touching his service and qualification as a juror that he had so expressed himself in favor of the plaintiff, he would have been challenged for cause, and if such challenge had not been sustained they would have peremptorily challenged him. Therefore, the appellant contends that the juror Wynn was not competent and qualified, and that he was biased in favor

of the plaintiff and prejudiced against the defendant, and that he went into the jury box with his mind made up that the plaintiff was entitled to recover.

It appears from the bill of exceptions that the evidence introduced upon the disposition of this question is substantially as follows: Wynn the juror testified that he did not know anything about the merits of the case before he was taken on the jury; that he had heard that Dickens was run over and got cut up, and so stated in his examination before he was accepted; and he stated in his examination he did not have any opinion about the case, neither did he have any bias in favor of or prejudice against the railway company, nor had he any such bias or prejudice at that time. He knew Dickens when he saw him; that he had no opinion when he was taken as a juror; that he was not on the regular jury, but was picked up on the morning the case went to trial by the deputy sheriff; that he lived in Temple; that he knew Mr. W. P. Cox; that he had never had any conversation with Mr. Cox, but had had with the other man. This other man referred to was John L. Durden. That it was not a fact that on or about Sunday, January 26th, about a week before the case was tried, that he had a conversation with one or both of these parties, and he goes on and expressly denies that he had a conversation with either Cox or Durden near the Harvey House in the town of Temple about a week before the trial.

Cox testified that he lived in Temple and knew the juror Wynn, and stated that Wynn, in a conversation with him and Durden, asked the question how much Dickens was suing for, and he replied about $50,-000 or $60,000. Wynn said that he thought he ought to have it. The case was discussed, and Wynn asked the question how it happened. Wynn expressed sympathy for Dickens. Durden undertook to tell him all he knew about it, and detailed how the accident occurred. This was the conversation that occurred near the Harvey House, about a week before the trial.

The evidence of Durden is substantially to the same effect as that of Cox. All these parties, it seems, lived in Temple where the accident happened and where the plaintiff resided. It also appears that the juror Wynn, on his voir dire, was especially interrogated with reference to his bias and prejudice and his opinion as to the merits of the case.

The evidence further shows that the conversation referred to was not known to the appellant or its attorneys at the time of the formation of the jury and was not discovered until after the trial. The bill of exceptions further states that the preponderance of the evidence showed that this conversation had taken place, and that that was the view of the court, and that it was the conclusion of the court that neither the defendant company nor any of its officers or attorneys in charge of the case knew of the conversation until after the conclusion of the trial; that the court, however, was further of the opinion that the conversation and statements there made by Wynn were not of such a character as disqualified him from jury service in this case; that the court was of the opinion that the defendant had not shown that the juror was biased in favor of the plaintiff or prejudiced against the defendant at the time he qualified, and that he had such an opinion relative to the

merits of the case as would disqualify him from performing the service of a juror at the time of the trial of the case; that the fact that he had expressed the opinion to Cox and Durden one week before the trial did not show that he was disqualified from jury service herein, or entertained the same views relative to this case at the time of trial hereof as he expressed to Cox and Durden. The views of the court upon this subject are possibly more tersely stated in this explanation which he appends to the bill:

"I can not say that the language imputed to the court is the exact language used by it from the bench, but it in effect is the meaning of what was intended. I concluded that, giving all parties credit for intending to be truthful, I would rather believe that the conversation of Wynn with Cox and Durden was so unimportant that it had escaped his memory than to believe that the evidence of any witness was false; and as Wynn on his voir dire and as a witness in this hearing has testified he had no opinion as to the merits, I could not hold such conversation with Cox and Durden would overcome his sworn testimony and his sworn answers on his voir dire, hence I find he was a competent juror." This statement of the court is to the effect that the conversation between Cox and Durden and Wynn did occur as testified to by the former, although denied by the latter, but he undertakes to avoid its effect as showing the expression of the opinion of the juror as to the amount plaintiff was entitled to, by the statement that the question was unimportant and had probably escaped the recollection of the juror, and that his statement on his voir dire disclaiming any opinion should be given controlling effect in overcoming any statement he had previously made indicating he was not fair and impartial.

However difficult the task may be to produce satisfactory evidence of the unfairness of a juror, and however reluctant the courts may be to disturb verdicts on such alleged grounds, we have no hesitancy in this instance in reaching the conclusion that the proof is ample so far as concerns this juror to establish the fact that the appellant has not had a trial before a fair and impartial jury, a right accorded all litigants, even though one be a railroad corporation The record discloses on other branches of the motion for new trial the circulation among the jurors in their retirement of a statement by this juror to the effect that he had heard it stated that the railway company had offered the appellee a considerable sum in settlement, which fact the bill of exception shows was not true, nor was there any evidence upon that subject. This is merely referred to as having some bearing on the question we are now considering—that is, whether the juror was impartial —and as a fact having some weight to be considered on this branch of the motion in determining his partisanship. The trial court, while finding that the conversation was as testified to by Cox and Durden, concluded that it was so unimportant that he had rather believe that it had escaped his, Wynn's, memory than to believe that his evidence on his voir dire was false, wherein he stated that he had no opinion as to the merits. This is throwing over the juror a mantle of charity that he has no desire to wear, for he did not claim that he had forgotten anything, nor that anything that was said was unimportant, but he denied in toto the conversation, and says that no such conver-

sation occurred, although the court had deliberately, after hearing all the evidence and giving him an opportunity to testify, which he availed himself of, found that such conversation did occur. There is nothing to indicate that he has a poor recollection of events, and in his examination upon this subject and in testifying as to other questions about his conduct when on the jury, he seems to have a distinct recollection of what transpired. And if he may not have recollected on his voir dire the conversation, the testimony of the other parties to it when examined on the motion for new trial, together with the pointed inquiry made of him concerning it, would have revived and refreshed his recollection, if not as to all that was said, certainly as to the fact that there was a conversation, which he denies. But is it likely that he had forgotten the conversation when on his voir dire he was asked the direct question whether he had expressed an opinion about the case? According to the witnesses who testified as to this conversation and who were believed by the court, Wynn's expressions were very emphatic in favor of the plaintiff to the effect that he ought to recover a large sum. He doubtless understood the responsibilities and duties of a juror, and admits on his voir dire that he was asked the question as to his opinion about the merits. We test his recollection or knowledge of the occurrence by the evidence that he was present and participated in the transaction, and when that is found to be the fact it is not likely that a matter of importance will be forgotten in so recent a time. That it was important he must have known, for if he had admitted his statement as testified to, he would have been objected to as a juror, and he doubtless understood when on his voir dire that this was the purpose of his so being interrogated as to his opinion.

While the statute does not, in express terms, allow a juror to be challenged on account of having expressed an opinion or entertained an opinion about the merits of the case, still the general power given to the trial court by virtue of articles 3208 and 3209 will permit a challenge to be entertained on any ground that unfits a person to sit on the jury; and for opinions entertained by jurors challenges were allowed under these articles in Couts v. Neer, 70 Texas, 473. A fair and impartial trial by a fair and impartial jury is what the law exacts, and this requirement becomes a delusion if men with bias or prejudice or preconceived ideas of the rights of one are allowed to sit in judgment on his case. Hughes v. State, 60 S. W., 565. The facts show that counsel for the appellants were misled into the belief that the juror was fair and impartial, and they did all that could be done to obtain from him the facts, and only learned the truth after the trial. We feel sure that the learned trial judge would have allowed the challenge to the juror if he had told upon his examination the facts that were developed on the motion for new trial; consequently, we are of the opinion that these assignments present reversible error, for which the judgment must be reversed.

The errors complained of in some of the other assignments, as to the misconduct of some of the jurors and of their considering facts that were not offered in evidence, will doubtless be guarded against, as far as possible, on another trial, and will not likely again occur.

The objection to the argument of Mr. Curtis will not likely again

arise. His prompt withdrawal of it indicates the fact that he will probably not repeat it.

We have met with more serious difficulty in considering the argument of Mr. Pearce, which is complained of in the nineteenth assignment. In discussing the mental suffering of the appellee he used this language: "He suffers in his mind; that he is not the same Will Dickens in his family that he was before he was chopped up. He suffers that today, he will suffer that tomorrow, and he will suffer that when his hair is white and whiter still—mental anguish—he will suffer that whenever he meets a friend. He will suffer that whenever he meets a stranger. He will suffer that when he goes to a public gathering. He will suffer mental anguish whenever he passes across the street." The argument at this point was objected to by counsel for defendant, whereupon Mr. Pearce responded: "I do not blame you; an exception is all there is." Counsel for the defendant responded: "I will take a bill of exceptions to that remark." Mr. Pearce then continued his address in the following language: "He testified upon the stand that he suffered in mind, and I am telling you what suffering in mind is, or rather, gentlemen of the jury, I am reminding you of what mind suffering is. As I started to say that he had, he would in crossing the street, or he would in going into a public house or private house, that he would be made the object of the curious eye—suffers mentally." Whereupon this was objected to and the bill of exceptions was taken. The court refused to check the argument, and it was permitted and did remain as a part of the argument of counsel to the jury.

In the case of Maynard v. Oregon R. R. & Nav. Co., 68 L. R. A., 479, the question of what may be considered as elements of mental suffering is very fully discussed and we think states the correct rule upon this subject. In that case the injured party was asked the following questions: "'Mr. Maynard, what, if any, mental suffering or agony have you sustained or had since the injuries that you received down here?' And he was allowed over objection to answer: 'Well, I suffered distress a good deal when I realized my condition. I am not able to work, and it distresses me to think about my little girl, and how I am going to support her and educate her and raise her up. Those are the matters that distress me.' Then followed a motion to strike out the whole of the answer last given as immaterial, irrelevant and not responsive to any issue in the case, and as calculated to unduly prejudice the minds of the jury against the defendant, which was denied. Based upon these premises, the defendant insists that the court erred (1) in permitting the plaintiff to testify that he had a little girl thirteen years old, because it is apparent that the only object plaintiff had in inquiring concerning her was to show that she was dependent upon him for support, which could not properly be considered as an element of damages in the case; and (2) in refusing to take the last answer of the witness from the consideration of the jury, because the distress or mental anguish of plaintiff suffered on account of his own condition in not being able to work and earn a livelihood, or on account of his little girl, in not being able to support and educate her, were also not proper elements of damages upon which to base a recov-

ery against the defendant. We will discuss these alleged errors in their inverse order, as counsel have so discussed and presented them.

"It is undoubtedly true that one suffering from injuries to his person, due to the negligence of another, may recover for mental distress and anguish resulting from the same cause. (Cooper v. Mullins, 30 Ga., 146, 76 Am. Dec., 638; Hannibal & St. J. R. Co. v. Martin, 111 Ill., 219, 232; City of Chicago v. McLean, 35 Ill. App., 273; Ferguson v. Davis County, 57 Ia., 601, 609; Kendall v. City of Albia, 73 Ia., 241, 245; Kennon v. Gilmer, 131 U. S., 22, 26; 33 L. ed., 110, 112; 9 Sup. Ct. Rep., 696.) Such mental distress or anguish, however, as is not the natural result of the accident, but is produced by the operation of the mind in the contemplation of the physical condition to which the injured party is reduced, or in contemplation of any extraneous suffering or inconvenience that such condition might entail, whether it respects the person himself or others dependent upon him, is not regarded as matter proper to form the basis of consequential damages. The doctrine is enunciated in Indianapolis & St. L. R. Co. v. Stables, 62 Ill., 313, 320, in the following language: 'It is the mind that either feels or takes cognizance of physical pain, and hence there is mental anguish or suffering inseparable from bodily injury, unless the mind is overpowered and consciousness is destroyed. The mental anguish which is not proper to be considered is where it is not connected with the bodily injury, but was caused by some mental conception not arising from the physical injury.' So, anguish of the mind, wholly sentimental, arising from the contemplation of a disfigurement of the person, can not be considered for the purpose of swelling the damage. The reason for the rule is forcibly stated in Chicago, B. & Q. R. Co. v. Hines, 45 Ill. App., 299, as follows: 'The law regards supposed injuries to sentimental feelings of this character as too remote and speculative to allow it as an element of damages in cases where no malice exists.' Of like character is Augusta & S. R. R. Co. v. Randall, 85 Ga., 297; Giffen v. City of Lewiston, 6 Idaho, 231, and Chicago, R. I. & P. R. Co. v. Caulfield, 11 C. C. A., 552, 27 U. S. App., 358, 63 Fed., 396. The same principle was controlling in Planters' Oil Co. v. Mansell (Texas Civ. App.), 43 S. W., 913, where the injured party was permitted by the trial court to show over objection that he was greatly annoyed and suffered mental anguish from the fact that the month's rent of $6 on his house would soon be due and that he had just that amount with which to pay it, the appellate court saying: 'The mental anguish which appellee experienced on account of the fact that his house rent would soon be due, which he would be unable to meet, and which (such is the implication) would result to the inconvenience or suffering of his family, does not naturally result from the injury. . . .'

"Again, in Atchison, T. & S. F. R. Co. v. Chance, 57 Kan., 41, it was said, which language indicates the state of the case also: 'The court erred in refusing to strike out the testimony to the effect that Finnigan was troubled by the sickness and confinement of his wife, and the fear that he would leave her and the child in a dependent and helpless condition. Under the decisions of this court a recovery may be had for mental suffering or anguish of mind resulting from physical pain and suffering endured by the injured party; but it is im-

proper to admit evidence as to mental suffering on account of the circumstances or condition of others.' A like ruling was made in Texas Mexican R. Co. v. Douglass, 69 Texas, 694, upon a similar state of facts as appears in this last case. See also City of Parsons v. Lindsay, 26 Kan., 426.

"Now in regard to the matter which it was sought to have withdrawn from the jury, there are two features involved: First, the witness says, in effect, that he suffered a good deal of distress by realizing his condition—that he was not able to work. This related to his mental suffering, as he was asked about that, but it was not such as would naturally result from his physical infliction. It arose by reason of the consideration or mental deduction that his infliction rendered him unable to work—a cause arising independently of the injury sustained. The fact that he was rendered incapable of pursuing his labors was a condition entirely legitimate for swelling the damages, but his meditation upon that fact, and the mental distress and anguish produced from such meditation would be wholly aside from and independent of any suffering caused by the accident or the physical infliction received; and, as the authorities say, it is too remote, speculative and uncertain upon which to base an estimate of damages.

"The other feature consists in the distress that it caused him when he thought of his little girl and how he was going to support and educate her, and it needs no further remark to show that this is extraneous of any distress of mind arising from the injuries received. So we conclude that the trial court erred in not withdrawing the witness' answer from the consideration of the jury."

The serious objection to a part of this argument, under the rule as stated, is that it brings to the consideration of the jury supposed elements of mental suffering which they are not allowed to consider in determining the amount of damages that the appellee might be entitled to.

There is an assignment of error complaining that the verdict is excessive; and, while we are not prepared to express an opinion upon this question, and are not required to do so, still, we will say this much, that verdicts for such amounts are not usual in cases of this character, so far as shown by the records of this court, and it is doubtless the case that the jury, in awarding the amount returned, gave considerable weight to the mental suffering of the plaintiff on account of his injuries, not only what he had suffered up to the time of the trial, but what he may suffer in the future. And the statement made by counsel in his argument in informing the jury what might be considered along that line doubtless had its effect, or was calculated to have the effect of inducing them to believe that they could consider as mental suffering those elements of mental emotion discussed by the counsel. The reference to the fact that Dickens would experience mental suffering today or tomorrow, or at one place as well as another, is possibly not objectionable, but the mental anguish that he would experience when he meets a friend or when he meets a stranger, or that will arise from the fact that he had become an object of pity, sympathy or of curiosity to the public generally or individually, is not the kind of mental suffering that the law gives compensation for; it is too remote. A discus-

sion of this question would really be only a repetition of what has been said in the authority cited. Therefore, we are of the opinion that much of the argument quoted was objectionable.

The second, third, fourth, fifth, sixth, fifteenth and seventeenth assignments, and possibly some not mentioned, all relate to the subject of assumed risk. The court submitted this case to the jury on the theory that the Act of the Legislature of April 24, 1905, page 386, Session Laws, was not applicable. That statute relates to assumed risk and qualifies the old doctrine as fully explained in St. Louis & S. F. Ry. Co. v. Mathis, 101 Texas, 342. It was urged in argument that this statute is not applicable; that it merely related to defective machinery, etc. We do not think that this is merely the effect of the statute, and in our opinion it would apply to a defect of the character alleged in this case.

The charge requested, which is in the seventh assignment of error and which the court refused to give, was substantially given in the main charge of the court.

There are some assignments of error that complain of certain charges which, in effect, instructed the jury that it was the duty of the appellant to exercise ordinary care to keep its approaches to the railroad track in a reasonably safe condition. The word "approaches" employed in these charges was evidently intended to mean, and doubtless the jury so understood it, to correspond to the facts and the allegations of negligence charged. It was not intended to mean an approach, such as a crossing of the track, but was evidently intended as an instruction to the effect that the railway company should exercise ordinary care to keep those places where its servants must work—that is, those places where they must approach the track for that purpose when engaged in the work—in an ordinarily safe condition.

The charge complained of in the tenth assignment of error was properly refused. It loses sight of the fact that it was a question to be determined whether the plaintiff had to get on the ground in order to make the coupling.

The point presented in appellant's eleventh assignment of error, wherein is complained of the refusal of the court to give a certain charge, is practically covered by the main charge of the court and some of those given at the request of the appellant. Furthermore, the charge requested was objectionable on the ground that it practically informed the jury that certain facts would constitute contributory negligence. Whether walking between the cars would be contributory negligence would be a question of fact to be passed upon by the jury.

There was no error in permitting the witness Blent to testify as to the condition of the coupling apparatus on the cars in question to show that the same was broken. That was all material as having some bearing on the question in accounting for the conduct of the plaintiff. The defect in the coupling apparatus was not presented as an issue of negligence, but it was proper to be inquired into as explaining why the plaintiff had to resort to the method that he did in order to undertake to uncouple the cars.

The twenty-third assignment as to the question of variance is overruled.

For the error pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*