**EVANS et al. v. GALBRAITH–FOXWORTH LUMBER CO. et al.**

No. 3311.

Court of Civil Appeals of Texas. Amarillo.

Nov. 13, 1929.

Rehearing Denied Dec. 18, 1929.

Works & Bassett, of Amarillo, Norman Coffee and J. A. Holmes, both of Borger, and Turner, Culton & Gibson, of Amarillo, for appellants.

Underwood, Johnson, Dooley & Simpson, Madden, Adkins & Pipkin, Palmer & Lambdin, Vance, Huff, and Rip C. Underwood, all of Amarillo, and Jos. H. Aynesworth, of Stinnett, for appellees.

JACKSON, J.

The plaintiff Galbraith-Foxworth Lumber Company, a corporation, filed this suit, numbered 501, in the district court of Hutchinson county, Tex., against the defendants Henry Evans and wife, Adella Evans, L. Pariser, W. A. Fowler, Wilkinson· & Bond, a copartnership composed of T. E. Wilkinson and J. R. Bond, Thompson Hardware Company, a firm composed of Grady Thompson and R. A. Thompson, and the corporations J. B. Klein Iron & Foundry Company, Giant Vulcan Overall Manufacturing Company, the First National Bank of Amarillo, Tex., and H. Levi & Co.

The plaintiff alleges that between November 30 and December 4, 1926, both dates inclusive, at the special instance and request of Henry Evans, it sold and delivered to him upon an oral contract certain building material, itemized in Exhibit A attached to and made a part of its petition. That such building material was purchased by ·Henry Evans for the purpose of and was used in constructing a one-story brick and tile building upon lot 13 in block 36 of the original town of Borger, Tex. That the prices of said material in the itemized account are just and reasonable, and Henry Evans promised and bound himself to pay plaintiff said amount upon the delivery of the last of said material, which was about December 4, 1926. That the account aggregates $2,157.65, upon which Henry Evans is entitled to a credit of $92.45, leaving a balance of $2,065.20, which is just, due, and unpaid. That the said Evans, though often requested, has failed and refused, and still fails and refuses, to pay said balance or any part thereof, to plaintiff's damage in the sum of $2,500. That during the time said material was purchased and delivered, said Evans was and still is the owner of said lot and premises.

That on the 8th day of February, 1927, within four months after the accrual of the indebtedness, plaintiff duly filed and had recorded in the county clerk's office of Hutchinson county, Tex., a properly verified account of said building material, sold and furnished to said defendant by plaintiff, and thereby fixed a materialman's lien against said premises to secure the payment of said indebtedness. A copy of said claim and account is attached to and made a part of plaintiff's petition.

Plaintiff alleges that each of the defendants, except Henry Evans, is claiming some interest in or lien upon said lot and the improvements thereon, but that if any of said defendants have any interest in or lien upon said premises, such interests or liens are subject and subordinate to plaintiff's lien, and said defendants are joined in this suit so they may appear and assert such interests or liens against said property in order that the court may determine the standing of such interests or liens, settle the priorities, and properly adjust the equities in the property between the parties.

W. A. Fowler, as plaintiff, on July 27, 1927, in cause No. 391, in the district court of Hutchinson county, Tex., sued Henry Evans and others unnecessary to name, alleging that ·he had furnished the defendants on the 19th and 26th days of November, 1926, at their special instance and request, certain building materials aggregating in value the sum of $372.50, at prices reasonable and fair; that the defendants were entitled to a credit of · $185.27, leaving a balance of $187.23 due and unpaid. That within the time required by law, plaintiff had filed with and had recorded in the county clerk's office of Hutchinson county, Tex., a proper claim and affidavit fixing a lien against lot 13 in block 36 in the original town of Borger, Tex., and asking judgment for his debt and the foreclosure of his lien.

On August 4, 1927, the J. B. Klein Iron & Foundry Company, plaintiff in cause No. 397 in the district court of Hutchinson county, Tex., sued Henry Evans and others unnecessary to mention, alleging that on the 6th day of November, 1926, the plaintiff, at the special instance and request of the defendant Henry Evans, furnished him certain building material at ·its reasonable and fair value, the items of which aggregate the sum of $466.50, to be used and which was used in the construction of a brick ·building located on lot 13 in block 36 of the original town of Borger, in Hutchinson county, Tex. That the defendant Henry Evans had failed and refused to pay the same or any part thereof, and the plaintiff company had, within due time, filed and had recorded in the county clerk's office of Hutchinson county, Tex., its itemized claim and affidavit fixing a materialman's lien upon the lot and premises to secure the payment of such indebtedness. It also alleged that the defendants which we have considered it unnecessary to name are asserting some kind of liens or claims in and to said premises, but that such liens or claims are inferior and subject to the lien of the J. B. Klein Iron & Foundry Company, and asked for judgment for its debt against Henry ·Evans and a foreclosure of its lien against all of the defendants.

On the 15th day of January, 1929, by agreement of the parties, the court, by proper order, consolidated causes No. 391, 397, and 501, and ordered that they proceed as a single suit under number 501, styled Galbraith-Foxworth Lumber Company v. Henry Evans et al.

W. A. Fowler, the Giant Vulcan Overall Manufacturing Company, J. Levi & Company, the J. B. Klein Iron & Foundry Company, and the First National Bank of Amarillo, Tex., appeared in cause No. 501 and alleged their respective debts against Henry Evans and their respective liens against the premises and asked for judgment for such debts and the foreclosure of such liens. Some of them also alleged such facts as they relied on to constitute an estoppel against the assertion of homestead rights by the defendants Henry Evans and Adella Evans; but we deem it unnecessary to state more specifically the pleadings of said defendants.

T. E. Wilkinson and J. R. Bond, doing business under the firm name of Wilkinson-Bond Lumber Company, answered by general demurrer, general denial, and alleged that at the time defendant Henry Evans arranged with them for the building material which they furnished and which was used in the construction of the building on lot 13 in block 36, the said Henry Evans and Adella Evans were husband and wife and occupied a building which they owned in the city of Borger, situated on lot 3 in block 29 of the original town of Borger, which building they were then using as a business and residence homestead. That Wilkinson and Bond had no notice that Evans and his wife intended to use the building erected on lot 13 in block 36 as a residence homestead, and under these facts and circumstances, Evans and wife are estopped from asserting any homestead claim in lot 13 in block 36 against them.

The defendants Henry Evans and wife, Adella Evans, answered, in the consolidated suit No 501, by general demurrer, general denial, and specially denied that Adella Evans was indebted to W. A. Fowler, the Galbraith-Foxworth Lumber Company, J. B. Klein Iron & Foundry Company, the First National Bank of Amarillo, Wilkinson & Bond, H. Levi & Company, or the Giant Vulcan Overall Manufacturing Company.

They pleaded their homestead rights in lot 13 in block 36, alleged that they are husband and wife, have two children, and on all the dates mentioned in the pleadings they had their home on said lot, having purchased it in August, 1926, with the intention of making it their business and residence homestead. That shortly thereafter they began the erection of certain improvements thereon for the purpose of engaging in the mercantile business and having a residence home thereon. That as soon as said building reached a stage of habitation, they moved into and occupied it as their home and still use and occupy it as such. That they never at any time contracted or agreed to place any liens against said property and that no liens for labor or material were contracted for as required by law. That they claim their homestead exemption under the laws of the state, and all the purported liens are void, cast clouds upon their title to said property, and ask that all such liens be canceled of record.

The Galbraith-Foxworth Lumber Company, the plaintiff in cause No. 501, by supplemental petition, in reply to the answer of the defendants Henry Evans and Adella Evans, urged a general demurrer, general denial, and specially pleaded that at the time Henry Evans bought the building material from it, and at the time such material was delivered, lot 13 in block 36 was vacant and unoccupied; that Henry Evans was conducting a mercantile business on lot 3 in block 29, which he owned in the town of Borger, and lived and resided on the improvements on said last-named lot with his wife as their residence homestead. That the defendant Henry Evans represented to plaintiff that he was purchasing the material to erect a business building on lot 13 in block 36 for commercial purposes, all of which facts, circumstances, and representations the defendant Adella Evans knew. That neither Henry Evans nor Adella Evans, at the time said materials were bought and delivered, informed the plaintiff that they or either of them had in mind to fit up living quarters in said building and occupy the same as a homestead. That they knew that plaintiff would rely on the fact that said building was erected for the purpose of trade, and if they had any intention of later occupying it as a homestead, it was their duty to disclose such intention, and having failed to do so, are estopped to assert any homestead claim in said property against the plaintiff.

In response to special issues submitted by the court in his main charge, the jury found that lot 3 in block 29 was the homestead of Henry Evans and wife; that Evans and wife, in the first of the spring of 1927, moved from the building on said lot 3 into the building on lot 13 in block 36, with the intention of abandoning lot 3 as their residence homestead and establishing such residence homestead on lot 13. That the cash market value of said lot 13, exclusive of improvements, was $4,500, and the cash market value of lot 3, exclusive of improvements, was the value of $2,500.

In response to special issues requested and given, the jury found that the materials furnished by Galbraith-Foxworth Lumber Company, W. A. Fowler, and the J. B. Klein Iron & Foundry Company, were used in the erection of the building on lot 13 in block 36.

The Giant Vulcan Overall Manufacturing Company and H. Levi & Company each relied on its respective judgment theretofore obtained against Henry Evans and properly abstracted, as constituting the lien which each asserted against the property and sought to foreclose.

The First National Bank of Amarillo relied on a deed of trust lien which it sought to foreclose.

The court rendered judgment against Henry Evans in favor of the Galbraith-Foxworth Lumber Company, J. B. Klein Iron & Foundry Company, and W. A. Fowler, for their respective debts and a foreclosure of their respective liens against the property, and decreed such liens to be first liens against the property and of equal rank.

He rendered judgment against Henry Evans in favor of the First National Bank of Amarillo for the sum of $5,334.43, and held that the bank had a valid lien against said property to secure the payment of $2,500 of its indebtedness, but adjudged the bank's lien to be a second lien and inferior to the liens of the Galbraith-Foxworth Lumber Company, J. B. Klein Iron & Foundry Company, and W. A. Fowler.

The court gave T. E. Wilkinson and J. R. Bond a judgment against Henry Evans for their debt and a foreclosure of their lien against a five-ninths interest in the property and, decreed said lien to be a third lien and inferior to the liens above foreclosed. To do this, the court took judicial knowledge of a judgment rendered in cause No. 569 on the docket of the district court of Hutchinson county, Tex., Adella Evans et al. v. Wilkinson-Bond Lumber Company, rendered on the 16th day of January, 1928, in which Wilkinson-Bond Lumber Company secured a judgment for their debt against Henry Evans and a foreclosure of their lien against Henry Evans and Adella Evans on a five-ninths interest in and to lot 13 in block 36.

Judgment was rendered against the defendants the Giant Vulcan Overall Manufacturing Company and H. Levi & Company, and the defendants L. Pariser and Grady Thompson and R. A. Thompson, a copartnership under the firm name of Thompson Hardware Company, made no appearance and filed no answer in cause No. 501.

Henry Evans and Adella Evans prosecute this appeal against the Galbraith-Foxworth Lumber Company, the J. B. Klein Iron & Foundry Company, W. A. Fowler, the First National Bank of Amarillo, and T. E. Wilkinson and J. R. Bond.

Appellants assign as error the action of the court in rendering judgment against them foreclosing the liens against lot 13 in block 36, and overruling their motion for a new trial in which they urged that although the jurors stated on their voir dire examination that they had no bias or prejudice against any of the parties to the suit, a Mr. Young, one of the jurors, told the jury while they were deliberating and before they had answered any of the issues that Henry Evans was a Jew, and thereby undertook to incite racial prejudice in the other jurors and to influence some of them to answer the issues against appellants. That the statements and conduct of the juror Young show that he was biased and prejudiced and influenced by such bias and prejudice in finding a verdict against appellants.

The testimony on the hearing of the motion for new trial shows that the jury, in the beginning of their deliberations, were divided three to nine, and after several hours of deliberation they were still so divided on whether or not appellants had ever established a homestead on lot 3 in block 29, and whether or not they had ever established a homestead on lot 13 in block 36, and if so, at what time they abandoned lot 3 in block 29 and moved into and occupied the premises on lot 13 in block 36 as their homestead. That the jury recessed without getting together on these issues, and when they convened the next morning, Mr. Young assumed a domineering attitude toward the three jurors in an effort to get them to agree to the answers as finally returned as the verdict. That he stated that the judgment of Mr. Gluver, one of the jurors, did not amount to anything and that Gluver had no right to be holding out for a decision the way he saw it. That Henry Evans was a Jew. That Mr. Cohen, one of the jurors, was a Jew, and that he (Young) could understand why Cohen would be for the Jews, but that he could not understand why Gluver would be partial to a Jew. That the argument between Young and Gluver was heated, they both got mad, and Young, in effect, challenged Gluver to engage in a personal encounter, and a fight between them was imminent and narrowly averted. That shortly after these occurrences, Mr. Gluver, Mr. Chism, and Mr. Cohen, the three jurors who had contended that under the evidence the appellants had never established a residence homestead on lot three in block 29, but had established their residence homestead on lot 13 in block 36, agreed to the findings that were returned as the verdict of the jury. .

Mr. Gluver testified that he was not afraid of Young, but after this difficulty,, he decided that maybe he was wrong and thought it best to avoid trouble, and he, Mr. Cohen, and Mr. Chism agreed to the answers of the issues as handed in to the court.

That when the issues were handed in, the jurors were polled and each stated the issues as answered constituted his verdict.

The testimony was sharply controverted as to whether the appellants had ever established a homestead on lot 3 in block 29; also when they established a residence homestead on lot 13 in block 36. There is no testimony in the record, other than the statement of the juror Young, that Henry Evans was a Jew, He was not present at the trial, but was out of the state. The testimony as to what occurred in the jury room is uncontroverted. Mr. Young did not testify.

Article 1, § 15, of the Constitution of this state, provides that:

"The right of trial by jury shall remain inviolate. The legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency."

Article 16, § 19, of the Constitution provides that:

"The legislature shall prescribe by law the qualification of grand and petit jurors."

In obedience to these provisions of the Constitution, the Legislature of the State, in article 2133, Rev. St. 1925, prescribed the qualifications of jurors, and also, in article 2134, defined what disqualifies a person to serve as a juror, and subdivision 4 of said last-named article states that "any person who has a bias or prejudice in favor of or against either of the parties" shall be disqualified.

Article 2151 provides that, "when the jury has been selected, such of them as have not been previously sworn for the trial of civil cases, shall be sworn by or under the direction of the court."

Article 2179 stipulates the oath which the jurors shall take, and it is as follows:

"You, and each of you, do solemnly swear that in all cases between parties which shall be to you submitted, you will a true verdict render, according to the law, as it may be given you in charge by the court, and to the evidence submitted to you under the rulings of the court. So help you God."

The court in his judgment recites that there came a good and lawful jury who were duly sworn and impaneled to try the case.

Article 2234 provides, in substance, among other things, that if on a hearing on a motion for a new trial, the misconduct of the jury proved is material, the court may grant a new trial.

In Moore v. Ivey et al., 277 S. W. 106, 107, in an opinion written by Judge Nickels of the Commission of Appeals and approved by the Supreme Court, it is stated:

"The determinative rules, or principles, of law are plain and well established. If, upon a consideration of the whole of the pertinent record, it is reasonably doubtful whether or not the improper conduct affected the amount of the verdict or the decision of any other material issue, the verdict should be set aside by the trial judge; if, in such a case, a new trial is not granted, there is an abuse of discretion by the trial judge, and reversal becomes the duty of appellate courts. H. & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; Hines v. Parry (Tex. Com. App.) 238 S. W. 886. It may be clear that eleven (or a lesser number) of the jurors were not, to any degree, influenced by the improper conduct; yet if it remains reasonably doubtful whether one (or a larger number) was, or was not, influenced, the vice remains and the verdict must be set aside (Southern Traction Co. v. Wilson, supra) because each juror can rightly agree to the verdict only when guided solely by the instructions of the trial judge and the evidence heard in open court. A proper corollary is that, when misconduct is once shown, and there is reasonable doubt as to its effect, that doubt must be resolved against the verdict."

The record in the trial of the case on its merits discloses no fact or circumstance tending to show that the alleged bias and prejudice of the juror Young arose after he was selected as a juror from the evidence admitted by the court. It must be concluded, therefore, that such prejudice as was in his mind existed before he was selected as a juror.

In the case of Smith v. Allbright (Tex. Civ. App.) 279 S. W. 852, it was held that because one of the jurors was acquainted with and had known one of the litigants for some time and for that reason such juror was very much in favor of such litigant, a new trial should have been granted by the trial court on account of the prejudice of such juror. In this case the court quotes with approval numerous definitions of bias and cites numerous authorities to sustain its petition. This holding was affirmed by the Commission of Appeals in Albright et al. v. Smith et al., 288 S. W. 178.

See also the definitions of prejudice, 6 Words & Phrases, Third Series, pp. 35 and 36.

In Gulf, Colorado & Santa Fe Ry, Co. v. Dickens, 54 Tex. Civ. App. 637, 118 S. W. 612, 615, the court says:

"However difficult the task may be to produce satisfactory evidence of the unfairness of a juror, and however reluctant the courts may be to disturb verdicts on such alleged grounds, we have no hesitancy in this instance in reaching the conclusion that the proof is ample so far as concerns this juror to establish the fact that the appellant has not had a trial before a fair and impartial jury, a right accorded all litigants, even though one be a railroad corporation."

■ And to this we add that a fair and impartial trial by a jury is a right under the law accorded to all litigants, regardless of race or nationality.

■ Because it is our belief that there certainly "exists substantial ground for a reasonable doubt as to its purity" (Moore v. Ivey, supra), we are of the opinion that the verdict of the jury should have been set aside by the trial court on the motion for new trial, because of the feeling and racial prejudice displayed by the juror Young during the deliberation of the jury upon its verdict.

■ The appellant assigns as error the action of the trial court in refusing to permit

Adella Evans to testify that she had not, before she moved into the building located on lot 13 in block 36, lived in the building on lot 3 in block 29 as her home.

The record discloses, in substance, that this witness had made this statement substantially several times while she was testifying, for which reason this assignment is overruled. Duggan v. Merritt (Tex. Civ. App.) 297 S. W. 1091.

The error assigned as to the court's taking judicial knowledge of a judgment rendered in his court neither pleaded nor proven, it is unnecessary to consider, because it probably will not occur on another trial.

The judgment is reversed, and the cause remanded.